# Illinois Official Reports

## Supreme Court

---

### *People v. Cherry*, 2016 IL 118728

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant and Cross-Appellee, v. JAMES CHERRY, Appellee and Cross-Appellant. |
| Docket No. | 118728 |
| Filed | September 22, 2016 |
| Decision Under Review | Appeal from the Appellate Court for the Fifth District; heard in that court on appeal from the Circuit Court of St. Clair County, the Hon. Michael N. Cook, Judge, presiding. |
| Judgment | Appellate court judgment affirmed in part and reversed in part. Circuit court judgment affirmed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Brendan F. Kelly, State's Attorney, of Belleville (Carolyn E. Shapiro, Solicitor General, and Michael M. Glick and Erin M. O'Connell, Assistant Attorneys General, of Chicago, and Patrick Delfino, Lawrence M. Bauer, and Joan M. Kripke, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People. |
| | Michael J. Pelletier, State Appellate Defender, Jacqueline L. Bullard, Deputy Defender, and Susan M. Wilham, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Springfield, for appellee. |

Justices                                JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1      Following a jury trial in the circuit court of St. Clair County, defendant, James Cherry, was found guilty of one count of armed violence (720 ILCS 5/33A-2(b) (West 2010)) and one count of aggravated battery with a firearm (720 ILCS 5/12-4.2(a) (West 2010)). The armed violence count was predicated on aggravated battery causing great bodily harm (720 ILCS 5/12-4(a) (West 2010)). The trial court merged the aggravated battery with a firearm conviction into the armed violence conviction and sentenced defendant to 25 years in prison. Defendant appealed, and the Appellate Court, Fifth District, concluded that aggravated battery cannot serve as the predicate felony for armed violence. 2014 IL App (5th) 130085, ¶ 19. Accordingly, the court vacated defendant's armed violence conviction and remanded the case to the trial court for sentencing on the remaining aggravated battery with a firearm conviction. *Id.* ¶ 31. The State appealed that decision to this court, and we allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Jan. 1, 2015). For the reasons that follow, we reverse that portion of the appellate court's decision vacating defendant's armed violence conviction.

¶ 2                              BACKGROUND

¶ 3      The evidence adduced at defendant's trial is set forth fully in the appellate court opinion below, and we need not repeat it here. For present purposes, it is sufficient to know that, in the early morning hours of October 31, 2010, defendant was involved in a parking lot altercation that ended with defendant shooting Larry Miller multiple times with a laser-sighted firearm. At the conclusion of defendant's trial, the jury convicted him of one count of armed violence predicated on aggravated battery (720 ILCS 5/33A-2(b), 12-4(a) (West 2010)) and one count of aggravated battery with a firearm (720 ILCS 5/12-4.2(a) (West 2010)). In addition, the jury found beyond a reasonable doubt that defendant committed both of these crimes with a laser-sighted firearm and that an extended-term sentence therefore was warranted (see 730 ILCS 5/5-5-3.2(b)(6) (West 2010)).

¶ 4      On April 6, 2011, which was two weeks after the jury returned its verdict, defense counsel filed a posttrial motion for a new trial. The motion alleged generally that the State failed to prove defendant's guilt beyond a reasonable doubt and specifically that the State failed to prove beyond a reasonable doubt that defendant's crimes were committed without legal justification. The trial court would go on to deny this motion at defendant's sentencing hearing, which was held three months later.

¶ 5      On June 30, 2011, defendant wrote a four-page letter to the trial court asserting that he had received ineffective assistance from his privately retained trial counsel. Specifically, defendant's letter alleged that trial counsel (1) assigned defendant's bond to his fee without defendant's knowledge; (2) failed to disclose a prior connection to the victim's father; (3) mishandled defendant's case by, among other things, failing to interview certain witnesses,

failing to test certain evidence, failing to hire a ballistics expert, and failing to contest the admission of certain evidence; (4) did not maintain adequate communication with defendant prior to trial; and (5) failed to prepare defendant to testify.

¶ 6 On July 6, 2011, defendant's sentencing hearing was held. During his statement in allocution, defendant attempted to read from his June 30, 2011, letter. The first two sentences of that letter read, "During my trial I did not have adequate representation. I was prejudiced by the poor performance of my attorney and a conflict of interest that violated my sixth amendment rights." However, before defendant had finished reading the second of these two sentences, the State requested a sidebar and expressed to the court its belief that the sentencing hearing was not the appropriate forum for defendant to air his misgivings about trial counsel's performance. In response, trial counsel informed the court that he "was probably going to be withdrawing anyway for purposes of appeal" and did not believe defendant's letter had "any relevance" at the sentencing hearing. At that point, the trial court told defendant that his complaints concerning trial counsel were not germane to his statement in allocution and instead should be raised as part of defendant's appeal. The trial court then sentenced defendant to 25 years in prison on the armed violence conviction, into which was merged defendant's aggravated battery conviction. After receiving his appellate admonishments, defendant asked the trial court how he could obtain a different lawyer. The trial court responded by confirming with defendant, "you believe that there's been a breakdown in your lawyer[-]client relationship *** among other things and would request that the Court appoint a lawyer, is that correct, sir?" When defendant responded in the affirmative, the trial court appointed a public defender to take over defendant's representation.

¶ 7 On August 4, 2011, defendant's appointed counsel filed a motion to reconsider defendant's sentence. The motion alleged that defendant's sentence was excessive in light of the specific facts of the case, which appointed counsel asserted were unlikely to recur. Moreover, the motion alleged that defendant is a veteran, that defendant was contrite and had shown remorse, and that the sentence imposed would create an extreme hardship for defendant's family and dependents. A hearing on the motion was held on December 7, 2011, and appointed counsel there emphasized defendant's military service and good character, that defendant had no prior convictions of any kind, that defendant's conduct occurred in the course of an altercation in which defendant felt threatened, and that "[t]his was a unique set of circumstances that resulted from defendant's extreme intoxication." In sum, appointed counsel insisted, "[t]his is a good and upstanding citizen who did something *** very stupid that he regrets very much." Accordingly, appointed counsel asked the court to reduce defendant's 25-year sentence to the statutory minimum of 20 years. At the conclusion of the hearing, the trial court denied defendant's motion.

¶ 8 A month later, on January 5, 2012, the trial court entered an order stating that, "pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984)," defendant's *pro se* letter alleging ineffective assistance of counsel and requesting a new trial "must be reviewed by the court." Accordingly, the trial court set the matter for hearing on February 23, 2012. After a series of continuances, the hearing finally was held on January 16, 2013. At the hearing, no witnesses were called, and the court requested that the parties give brief argument on the issues. Appointed counsel essentially summarized the concerns raised in defendant's letter, including defendant's claims that trial counsel was ineffective for failing to preserve evidence from the crime scene, failing to call certain witnesses, and failing to retain a ballistics expert. In addition, appointed counsel

argued for the first time that trial counsel was ineffective for failing to review certain medical records that may have shown that defendant was not under the influence of alcohol at the time of the shooting. In response, the State argued principally that the concerns raised by defendant all related to matters of trial strategy. In addition, the State pointed out that trial counsel had been privately retained and that defendant therefore could have fired him at any point he became dissatisfied with the quality of his representation. Instead, defendant brought his concerns to the trial court's attention only after his conviction, even though many of those concerns related to matters that occurred during the pretrial phase of the case. After hearing from the parties, the trial court concluded that, under the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984), defendant had failed to demonstrate a reasonable probability that counsel's alleged errors substantially affected the outcome of defendant's case. In other words, the trial court concluded, defendant had failed to demonstrate sufficient prejudice to justify the granting of relief under *Strickland*. The trial court therefore denied defendant's request for a new trial.

¶ 9 On appeal, defendant raised two issues. First, defendant argued that his armed violence conviction must be vacated because aggravated battery cannot serve as the predicate for that offense. Second, defendant argued that he received ineffective assistance from his appointed counsel at the *Krankel* hearing. More specifically, defendant argued that, by not calling any witnesses and instead merely repeating the claims contained in defendant's *pro se* letter, appointed counsel effectively provided no representation at all, such that prejudice should be presumed under the standard established in *United States v. Cronic*, 466 U.S. 648, 656-57 (1984). On the first issue, the appellate court agreed with defendant, holding that "the plain language of the [armed violence] statute prohibits predicating armed violence on any part of the aggravated battery statute, including section 12-4(a)." 2014 IL App (5th) 130085, ¶ 19. On the second issue, the appellate court held that defendant's ineffective assistance claim was governed by *Strickland* rather than by *Cronic* and that defendant therefore was required to show that he was prejudiced by appointed counsel's deficient performance at the *Krankel* hearing. *Id.* ¶ 26. After noting that defendant did not even attempt to make such a showing, the appellate court nevertheless examined the record for itself and determined that no prejudice occurred. *Id.* ¶¶ 29-30. Accordingly, the appellate court vacated defendant's armed violence conviction and remanded the cause for sentencing on defendant's remaining conviction for aggravated battery with a firearm. *Id.* ¶ 31.

¶ 10 The State appealed to this court, contesting the appellate court's conclusion that aggravated battery cannot serve as the predicate for armed violence. We allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Jan. 1, 2015). Defendant then cross-appealed, contesting the appellate court's determination that appointed counsel was not ineffective at the *Krankel* hearing.

¶ 11 DISCUSSION

¶ 12 *Armed Violence*

¶ 13 We begin with whether aggravated battery can serve as the predicate felony for armed violence. This is an issue of statutory interpretation, and the rules governing our inquiry are familiar. When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent, keeping in mind that the best and most reliable indicator of that intent is the

statutory language itself, given its plain and ordinary meaning. *People v. Howard*, 233 Ill. 2d 213, 218 (2009). Unless the language of the statute is ambiguous, this court should not resort to further aids of statutory construction and must apply the language as written. *People v. Glisson*, 202 Ill. 2d 499, 504-05 (2002). The construction of a statute is a question of law, and our review therefore is *de novo*. *People v. Davison*, 233 Ill. 2d 30, 40 (2009).

¶ 14        The appellate court below concluded that "the plain language of the [armed violence] statute prohibits predicating armed violence on any part of the aggravated battery statute, including section 12-4(a)." 2014 IL App (5th) 130085, ¶ 19. The foundation for the appellate court's conclusion is section 33A-2(b) of the armed violence statute, which reads:

> "(b) A person commits armed violence when he or she personally discharges a firearm that is a Category I or Category II weapon while committing any felony defined by Illinois law, *except \*\*\* any offense that makes the possession or use of a dangerous weapon either an element of the base offense, an aggravated or enhanced version of the offense, or a mandatory sentencing factor that increases the sentencing range*." (Emphasis added.) 720 ILCS 5/33A-2(b) (West 2010).

According to the appellate court, aggravated battery cannot serve as the predicate for armed violence because it is an offense that makes the possession or use of a dangerous weapon "an element of *\*\*\** an aggravated or enhanced version" of that offense. 2014 IL App (5th) 130085, ¶ 19. In support, the appellate court points out that sections 12-4(a) and 12-4(b)(1) of the aggravated battery statute, which respectively prohibit battery causing great bodily harm and battery using a weapon other than a firearm, are Class 3 felonies (see 720 ILCS 5/12-4(a), (b)(1) (West 2010)). 2014 IL App (5th) 130085, ¶ 19. Meanwhile, the appellate court notes, aggravated battery with a firearm is a Class X felony (see 720 ILCS 5/12-4.2 (West 2010)). 2014 IL App (5th) 130085, ¶ 19. Based on this, the appellate court concludes that "aggravated battery with a firearm is an enhanced version of aggravated battery." *Id.* More importantly, the appellate court explains, because the foregoing enhancement results from the defendant's use of a dangerous weapon, "the logical conclusion" is that aggravated battery "is specifically excluded" as a predicate offense by the plain language of the armed violence statute. *Id.*

¶ 15        We disagree with the appellate court's conclusion. The armed violence statute prohibits the predicate use of any felony that "makes the possession or use of a dangerous weapon either an element of the base offense, an aggravated or enhanced version of the offense, or a mandatory sentencing factor that increases the sentencing range." 720 ILCS 5/33A-2(b) (West 2010). The base offense at issue in this case is aggravated battery. That said, no one here is arguing that the possession or use of a dangerous weapon is an element of aggravated battery itself. Neither is anyone arguing that the possession or use of a dangerous weapon is a mandatory sentencing factor that increases the sentencing range for aggravated battery. Rather, the only argument advanced in this case is that the possession or use of a dangerous weapon is an element of an "aggravated or enhanced version" of aggravated battery, namely, aggravated battery with a firearm.

¶ 16        The appellate court's conclusion that aggravated battery with a firearm is an "aggravated or enhanced version" of aggravated battery is based solely on the fact that aggravated battery is typically a Class 3 felony, whereas aggravated battery with a firearm is a Class X felony. The problem with the appellate court's approach is that, in focusing on the respective penalties, it wholly ignores the actual elements of these offenses. This is significant because the statutory

elements plainly demonstrate that, rather than being an aggravated or enhanced version of *aggravated* battery, aggravated battery with a firearm is, like aggravated battery itself, an aggravated or enhanced version of *battery*. The aggravated battery and aggravated battery with a firearm statutes share an identical structure. Both offenses require the State to prove the commission of a battery, and both offenses require the State to prove the presence of an additional factor aggravating that battery. Consider, for example, the two forms of aggravated battery highlighted by the appellate court below—one involving the infliction of great bodily harm and one involving the use of a deadly weapon other than a firearm. To prove the former, the State must prove that the defendant

> "*in committing a battery,* intentionally or knowingly cause[d] great bodily harm ***." (Emphasis added.) 720 ILCS 5/12-4(a) (West 2010).

Similarly, to prove the latter offense, the State must prove that the defendant:

> "*[i]n committing a battery*, ***
>> [used] a deadly weapon other than by the discharge of a firearm[.]" (Emphasis added.) 720 ILCS 5/12-4(b)(1) (West 2010).

Under both of these provisions, the underlying offense that the State must prove is *battery*, while the remaining elements serve to aggravate that battery. In exactly the same way, the aggravated battery with a firearm statute requires the State to prove both the commission of a battery and the presence of a factor aggravating that battery. Thus, to prove aggravated battery with a firearm, the State is required to prove that the defendant:

> "*in committing a battery*, knowingly or intentionally by means of the discharging of a firearm *** cause[d] any injury to another person ***." (Emphasis added.) 720 ILCS 5/12-4.2(a) (West 2010).

Once again, the underlying offense that the State must prove is *battery*, while the remaining elements serve to aggravate that battery. So considered, aggravated battery with a firearm is clearly not an enhanced or aggravated version of aggravated battery; rather, it is simply one more aggravated version of battery.

¶ 17    Or to put it another way, the appellate court's conclusion below would be correct if the aggravated battery with a firearm statute read as follows:

> "A person commits aggravated battery with a firearm when he, in committing an *aggravated battery*, knowingly or intentionally by means of the discharging of a firearm (1) causes any injury to another person ***."

No question, such an offense would be "an aggravated or enhanced version" of aggravated battery, as the possession or use of a dangerous weapon would aggravate the underlying *aggravated* battery. But this is not how the aggravated battery with a firearm statute reads. On the contrary, and just as in the aggravated battery statute, the aggravating factor set forth in the aggravated battery with a firearm statute aggravates the underlying crime of *battery*. The logical conclusion, therefore, is that aggravated battery with a firearm is *not* an aggravated or enhanced version of *aggravated* battery; rather, it is an aggravated or enhanced version of *battery*.

¶ 18    Or to put it yet another way, aggravated battery with a firearm cannot be an enhanced or aggravated version of aggravated battery for the simple reason that the commission of an aggravated battery is not required under the aggravated battery with a firearm statute. Rather,

the commission of a *battery* is required. It makes no sense to say that offense *A* is an enhanced or aggravated version of offense *B*, where the commission of offense *B* is not a necessary element of offense *A*. Yet that is exactly the case with aggravated battery with a firearm and aggravated battery. The commission of an aggravated battery is not an element of aggravated battery with a firearm. By definition, then, aggravated battery with a firearm cannot be an "enhanced or aggravated version" of aggravated battery.

¶ 19        In reaching this result, we note that our conclusion wholly comports with and vindicates the public policy that informs the armed violence statute. In 2007, the legislature enacted Public Act 95-688 (eff. Oct. 23, 2007). Among other things, Public Act 95-688 added the language to the armed violence statute that is at issue in this case, namely, the language excluding "any offense that makes the possession or use of a dangerous weapon either an element of the base offense, an aggravated or enhanced version of the offense, or a mandatory sentencing factor that increases the sentence range." Significantly, Public Act 95-688 was enacted just months after this court's decision in *People v. Hauschild*, 226 Ill. 2d 63 (2007), which held that the sentence for armed robbery with a firearm violated the proportionate penalties clause because it was more severe than the sentence for armed violence predicated on robbery, which has the identical elements. This court has since acknowledged that Public Act 95-688 was a direct response to *Hauschild* and "remedied the disproportionality that existed between the armed violence and armed robbery statutes." See *People v. Blair*, 2013 IL 114122, ¶ 21.

¶ 20        In other words, the language at issue in this case was designed specifically to foreclose any existing or potential proportionate penalties problems that might exist between the armed violence statute and other offenses containing identical elements. That is plainly not the case here. Indeed, armed violence predicated on aggravated battery causing great bodily harm requires the State to prove that (1) while committing a battery, defendant (2) knowingly (3) caused *great bodily harm* and (4) personally discharged a firearm. See 720 ILCS 5/33A-2, 12-4(a) (West 2010). By contrast, aggravated battery with a firearm requires the State to prove that (1) in committing a battery, defendant (2) knowingly or intentionally (3) caused *any injury* to another person (4) by means of discharging of a firearm. 720 ILCS 5/12-4.2(a) (West 2010). Thus, while the State was required to prove *great bodily harm* to secure a conviction for armed violence predicated on aggravated battery causing great bodily harm, it was required to prove only *any injury at all* to secure the aggravated battery with a firearm conviction. These two offenses therefore do *not* contain identical elements, and therefore they are not implicated either by *Hauschild* or by the 2007 statutory amendments.

¶ 21        In sum, the issue before us is whether aggravated battery with a firearm is an enhanced or aggravated version of aggravated battery, such that aggravated battery cannot serve as the predicate for armed violence. Clearly, it is not. Instead, like aggravated battery itself, aggravated battery with a firearm is an enhanced or aggravated form of battery. Consequently, there is absolutely no reason why, as charged in this case, aggravated battery cannot serve as the predicate for a charge of armed violence.[1] The appellate court's conclusion to the contrary

_____

[1]Nothing in this discussion should be construed to suggest that aggravated battery with a firearm *itself* can be used as a predicate for armed violence, as that offense is clearly disqualified by the fact that its elements include "the possession or use of a dangerous weapon."

is reversed.

¶ 22 *Appointed Counsel's Performance*

¶ 23    We next consider defendant's argument that he received ineffective assistance from his appointed counsel at the *Krankel* hearing. Specifically, defendant asserts that, at the *Krankel* hearing, appointed counsel simply adopted and repeated the *pro se* arguments contained in defendant's June 30, 2011, letter while doing "nothing to advance [those] claims or counter the State arguments that [defendant] received the adequate assistance of trial counsel." According to defendant, appointed counsel's inaction in this regard "entirely failed to subject the prosecution's case to meaningful adversarial testing," such that this court may presume prejudice under the standard established in *United States v. Cronic*, 466 U.S. 648 (1984). We disagree.

¶ 24    Ordinarily, in determining whether a defendant was denied the effective assistance of counsel, we apply the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by this court in *People v. Albanese*, 104 Ill. 2d 504 (1984). Under *Strickland*, to prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687. More specifically, the defendant must demonstrate that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Because a defendant must satisfy both prongs of the *Strickland* test to prevail, the failure to establish either precludes a finding of ineffective assistance of counsel. *People v. Henderson*, 2013 IL 114040, ¶ 11.

¶ 25    That said, the Court in *Strickland* also noted that there are some circumstances so likely to prejudice the accused that such prejudice need not be shown but instead will be presumed. *Strickland*, 466 U.S. at 692. In *United States v. Cronic*, 466 U.S. 648 (1984), which was a companion case to *Strickland*, the Court explained that prejudice may be presumed where (1) the defendant "is denied counsel at a critical stage," (2) counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing," or (3) counsel is called upon to represent a client in circumstances under which no lawyer could prove effective assistance. *Id.* at 659-61.

¶ 26    Here, defendant is arguing that appointed counsel's performance at the *Krankel* hearing triggers the second *Cronic* exception—namely, failing to subject the prosecution's case to meaningful adversarial testing. In discussing this exception, the Supreme Court has characterized it as a "narrow exception" to *Strickland* that "infrequently" applies. *Florida v. Nixon*, 543 U.S. 175, 190 (2004). Indeed, for this exception to apply, it is not enough that counsel failed to oppose the prosecution "at specific points" in the proceeding. *Bell v. Cone*, 535 U.S. 685, 697 (2002). Rather, "the attorney's failure must be complete," meaning that "counsel failed to oppose the prosecution throughout the *** proceeding as a whole." *Id.* In *People v. Caballero*, 126 Ill. 2d 248 (1989), this court explained that the second *Cronic* exception applies when "counsel's effectiveness has fallen to such a low level as to amount not merely to incompetence, but to no representation at all." (Internal quotation marks omitted.) *Id.* at 267 (citing *Cronic*, 466 U.S. at 659). Along the same lines, the Seventh Circuit Court of Appeals has noted that "courts have rarely applied *Cronic*, emphasizing that only non-representation, not poor representation, triggers a presumption of prejudice." *Miller v.*

*Martin*, 481 F.3d 468, 473 (7th Cir. 2007). Elsewhere, the Seventh Circuit has explained that "*Cronic* only applies if counsel fails to contest *any* portion of the prosecution's case; if counsel mounts a partial defense, *Strickland* is the more appropriate test." (Emphasis in original.) *United States v. Holman*, 314 F.3d 837, 839 n.1 (2002).

¶ 27    Given these limitations, it is not surprising that, in the more than 30 years since *Cronic* was decided, this court has found *per se* ineffectiveness under the second *Cronic* exception only twice. The first time was in *People v. Hattery*, 109 Ill. 2d 449 (1985). In *Hattery*, the defendant pleaded not guilty to the murders of a mother and her two children. *Id.* at 458. Nevertheless, during his opening statement, defense counsel told the jury:

> " 'Ladies and gentlemen of the jury, he [defendant] did it. He did everything [the prosecution] just told you. ***
>
> *We are not asking you to find [him] not guilty. At the end of your deliberations, you will find him guilty of murder. We are asking you to consider the evidence that you hear today and in the next few days to explain why he did the horrible thing that he did. Once you have found him guilty, we will proceed and you will find him eligible for the death penalty. The question, and the only question facing you, will be whether to impose the death penalty on Charles Hattery for trying to save the life of his family.* Thank you.' "
> (Emphasis in original.) *Id.* at 458-59.

To make matters worse, during the defendant's trial, his attorneys advanced no theory of defense, presented no evidence of their own, and did not make a closing argument to the jury. *Id.* at 459. Instead, they attempted to show on cross-examination that defendant was compelled to kill the victims, even though compulsion is not a defense to murder. *Id.* In concluding that these facts warranted a *per se* finding of ineffectiveness under *Cronic*, the court emphasized that "[t]he concession of defendant's guilt by his attorneys was unequivocal" and "impressed upon the jury the false notion that the guilt or innocence of the defendant was not an issue but, rather, had already been decided." *Id.* at 464. The result was that "counsel's actions deprived defendant of the right of having the issue of his guilt or innocence presented to the jury as an adversarial issue." *Id.*

¶ 28    The second and only other time we applied the second *Cronic* exception was in *People v. Morris*, 209 Ill. 2d 137 (2004), *overruled in part on other grounds in People v. Pitman*, 211 Ill. 2d 502 (2004). In *Morris*, defense counsel's opening statement "readily admitted" defendant's guilt to the jury. 209 Ill. 2d at 182. Moreover, the apparent purpose of this admission was to lay the groundwork for a plea of jury nullification based on sympathy or compassion, something this court characterized as "a minimal, nonlegal defense." *Id.* at 184. Even so, the court emphasized that "defense counsel's performance in the case at bar cannot be considered *per se* ineffective simply because the defense *** offered at trial was a nonlegal plea for jury sympathy." *Id.* No, what tipped the scales in *Morris* was that, after conceding her client's guilt and pursuing a nonlegal plea for jury sympathy, defense counsel then affirmatively introduced evidence of her client's involvement in a grisly and unrelated murder, even though the trial court previously had ruled such evidence inadmissible *at defense counsel's request*. *Id.* at 184-85. Calling this "an unusual convergence of errors," this court concluded that a finding of *per se* ineffectiveness was warranted. *Id.* at 187. In so doing, the court stressed that "[d]efense counsel's erroneous understanding of the trial court's ruling on the [other] murder opened the door to the introduction of graphic details regarding the murder, to the State cross-examining

defendant for 45 minutes about the crime, and to defendant's admission of guilt for that murder." *Id.* Not only was this inherently prejudicial to the defendant, but more importantly, "[o]nce defense counsel introduced the extensive and inflammatory evidence regarding the [other] murder, the minimal but constitutionally acceptable strategy of appealing to the jury's sympathy regarding the murder [at issue] was utterly negated." *Id.* at 187-88. As a result, the court was "forced to conclude that there was a breakdown of the adversarial process during defendant's trial such that there was no meaningful adversarial testing of defendant's case." *Id.* at 188. Indeed, "[f]or *** all practical effect, as a result of defense counsel's actions, defendant stood before the jury throughout the trial with no defensive strategy whatsoever." *Id.*

¶ 29    These, then, are the only two instances in which this court has found *per se* ineffectiveness under the second *Cronic* exception. According to defendant, the case now before us should be the third. We disagree. In both *Hattery* and *Morris*, counsel effectively conceded the State's entire case against the defendant. As importantly, in both cases, counsel did this absent any coherent or plausibly effective strategy to justify it, thereby ensuring the defendant's unmitigated conviction. Nothing even close to that happened in the case before us. Again, the second *Cronic* exception applies only when counsel " '*entirely* fails to subject the prosecution's case to meaningful adversarial testing.' " (Emphasis in original.) *Bell*, 535 U.S. at 697 (quoting *Cronic*, 466 U.S. at 659). Here, the public defender who is the subject of defendant's *Cronic* claim did not even enter the case until after defendant was both convicted and sentenced. And by the time of the *Krankel* hearing, defendant's motions for new trial and to reconsider sentence had been filed, argued, and denied. In other words, by the time of appointed counsel's alleged failures, "the prosecution's case" was effectively over and no longer subject to "meaningful adversarial testing." Moreover, appointed counsel hardly provided "no representation at all." (Internal quotation marks omitted.) See *Caballero*, 126 Ill. 2d at 267. On the contrary, upon entering the case, appointed counsel immediately filed and argued a motion to reconsider defendant's sentence, which the trial court denied. Then, at the *Krankel* hearing, appointed counsel orally argued defendant's *pro se* claims concerning trial counsel's alleged ineffectiveness. Now admittedly, defendant argues that appointed counsel should have done more at the *Krankel* hearing to develop and advance defendant's *pro se* claims, such as introduce evidence and call relevant witnesses. This may or may not be true. But even if it *is* true, appointed counsel's failure to introduce evidence or testimony in support of defendant's *pro se* ineffective assistance claims hardly rises to the level of "entirely fail[ing] to subject the prosecution's case to meaningful adversarial testing." On the contrary, if established, such a failure would fall squarely in the category of poor representation, not "no representation at all." The appellate court therefore was correct in holding that defendant's claims are governed not by *Cronic* but by *Strickland*.

¶ 30    Accordingly, we turn to *Strickland*. To establish ineffective assistance of counsel under *Strickland*, a defendant must demonstrate that (1) counsel's performance was objectively unreasonable compared to prevailing professional standards and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688, 694. This standard poses a problem for defendant because, as the appellate court below correctly noted, defendant failed to address the prejudice prong of *Strickland* in his appellate court brief. 2014 IL App (5th) 130085, ¶ 29. Instead, in that brief, defendant placed all of his eggs in the *Cronic* basket, insisting that his is one of the very rare cases in which prejudice may be presumed. *Id.* And while defendant

essentially does the same thing in this court, he does make a slender attempt to address *Strickland*'s prejudice prong, arguing in his brief that, if this court concludes that *Strickland* applies, "the requirement to show prejudice should be relaxed." Setting aside whether this court may "relax" the *Strickland* standard in a case governed by *Strickland*, we are confronted with the fact that, slim as it is, defendant's appeal to *Strickland* comes too late. It is well settled that arguments raised for the first time in this court are forfeited. *People v. Robinson*, 223 Ill. 2d 165 (2006). Here, defendant's only argument in the appellate court was that prejudice should be presumed in this case under the second *Cronic* exception. He made no attempt in the appellate court either to address or to satisfy *Strickland*'s prejudice prong, and consequently any argument to that effect is now forfeited.

¶ 31    Having forfeited any argument concerning *Strickland*'s prejudice prong, defendant's ineffective assistance claim necessarily fails. Again, to prevail on an ineffective assistance claim under *Strickland*, a defendant must establish both prongs of the *Strickland* test, such that the failure to establish either precludes a finding of ineffective assistance of counsel. Here, defendant cannot establish the prejudice prong, as he has forfeited any argument concerning it. His ineffective assistance of counsel claim therefore fails, and we affirm the appellate court's conclusion on this point.

¶ 32    In reaching this result, we reject defendant's contention that holding him to *Strickland*'s prejudice standard "places [him] in an impossible situation." According to defendant, the situation is impossible because, in order to show prejudice under *Strickland*, he must demonstrate a reasonable probability that, had appointed counsel introduced certain evidence and testimony at the *Krankel* hearing, the outcome of that hearing would have been different. Yet in order to do that, defendant maintains, the record would have to contain the very evidence that counsel failed to introduce, which obviously it does not. In other words, defendant argues, there is an insufficient factual basis in this case upon which to base a claim of prejudice under *Strickland*, and the reason for that insufficiency is the very ineffectiveness about which defendant complains. Moreover, defendant fears that, having now raised these issues on direct appeal, any attempt to develop them in a postconviction petition will be barred by *res judicata*.

¶ 33    Although we do not dispute defendant's characterization of the record, we do dispute his assertion that an "impossible situation" results. It is an altogether common occurrence that the viability of a *Strickland* claim will turn on matters outside the record. And the legislature has provided a mechanism for dealing with that in the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2010)), which specifically allows for the raising of "constitutional questions which, by their nature, depend[ ] upon facts not found in the record." *People v. Thomas*, 38 Ill. 2d 321, 324 (1967). Nor is it necessarily the case, as defendant maintains, that our rejection of his ineffectiveness claim in this appeal forecloses his ability to raise that claim in a properly supported postconviction petition. In *Thomas*, for example, the State argued that the defendant's postconviction ineffective assistance claim was barred by *res judicata* because this court considered and rejected that same claim in the defendant's direct appeal. *Id.* at 323-24. This court disagreed, explaining that our rejection of that claim on direct review was because "the record itself did not support" it. *Id.* at 324. At the postconviction stage, by contrast, the claim was supported by affidavits that raised matters not contained in the common-law record. *Id.* The court concluded that, "since many of the allegations contained in defendant's [postconviction petition] require an inquiry into matters outside of the

common-law record, and *** since our decision [in the defendant's appeal from his guilty plea] was based only upon that record," defendant's postconviction claim could not be dismissed on *res judicata* grounds. *Id.* at 324-25; see also *People v. Taylor*, 237 Ill. 2d 356, 362 (2010) (raising conflict-of-interest claim on direct review did not preclude the raising of that same claim in a postconviction petition, where postconviction claim was supported by information outside the trial record). In other words, the state of the record does not compel the suspension of *Strickland*'s prejudice standard. Rather, it compels defendant to satisfy that standard through the collection and presentation of "affidavits, records, or other evidence" not contained in the record, just as the Post-Conviction Hearing Act contemplates.

¶ 34                                              CONCLUSION

¶ 35        For the foregoing reasons, we conclude that (1) defendant was properly convicted of armed violence predicated on aggravated battery and (2) defendant failed to establish that he received ineffective assistance of counsel at the *Krankel* hearing. We therefore reverse the appellate court as to the first of these points, affirm the appellate court as to the second of these points, and affirm the circuit court's judgment in its entirety.

¶ 36        Appellate court judgment affirmed in part and reversed in part.
¶ 37        Circuit court judgment affirmed.