NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240061-U

NO. 4-24-0061

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 25, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| IJEOMA J. UWASOMBA, | ) | No. 21CF105 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Charles M. Feeney III, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice Cavanagh and Justice Doherty concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court affirmed the trial court's judgment, as the evidence was sufficient to uphold defendant's conviction of aggravated battery of a peace officer and neither defendant's trial nor posttrial counsel provided ineffective assistance of counsel.

¶ 2     On July 12, 2022, a jury found defendant, Ijeoma J. Uwasomba, guilty of aggravated battery of a corrections officer. 720 ILCS 5/12-3.05(d)(4)(i) (West 2020). Defendant's trial counsel failed to file a motion for a new trial before withdrawing from the case. A year later, defendant retained new counsel, who failed to order a trial transcript to support her motion for leave to file a motion for a new trial. The trial court denied counsel's motion for leave and subsequent motion to reconsider, finding there were no grounds to justify a motion for a new trial over a year after the verdict was entered. The court sentenced defendant to four years in the Illinois Department of Corrections on December 8, 2023. Defendant timely appealed, and the court

appointed counsel to represent her.

¶ 3       On appeal, defendant argues that (1) the State failed to present sufficient evidence to find her guilty beyond a reasonable doubt and (2) her trial and posttrial counsel were both ineffective under *United States v. Cronic*, 466 U.S. 648 (1984). For the reasons that follow, we affirm defendant's conviction and hold that defendant's attorneys were not ineffective under the framework in *Cronic*.

¶ 4                                    I. BACKGROUND

¶ 5       On July 20, 2021, defendant was charged with one count of aggravated battery of a corrections officer (720 ILCS 5/12-3.05(d)(4)(i) (West 2020)) for throwing a glass of milk onto Woodford County Sheriff's Office Corrections Officer Tyler Wahls earlier that day. We recount the facts relevant to our analysis of the issues raised by defendant on appeal.

¶ 6       On September 2, 2021, defense counsel moved to determine defendant's fitness to stand trial after receiving "a call from [a] Jail Superintendent" about her "bizarre behavior in the jail." The trial court granted the motion for the fitness evaluation. The psychiatrist administering the fitness evaluation concluded that defendant "has an unspecified mental disorder" and "was not fit to stand trial" but that it was "likely that she will attain fitness to stand trial in the next 12 months." On September 8, 2021, the court remanded defendant "to the custody of the Department of Human Services for treatment on an inpatient basis." Defendant was admitted to McFarland Mental Health Center on November 17, 2021, and a progress report on November 23, 2021, stated that defendant remained unfit to stand trial. She was diagnosed with severe bipolar disorder with psychosis. After a reassessment of her fitness on February 9, 2022, she was deemed fit to stand trial and released from McFarland Mental Health Center on February 16, 2022.

¶ 7       On March 14, 2022, defendant appeared for a hearing to review her fitness

represented by a new, privately retained attorney, Edward Moor. By agreement of the parties, the trial court entered an order stating that she was fit to stand trial.

¶ 8 Trial began on July 11, 2022. Wahls testified that on July 20, 2021, defendant was incarcerated at the Woodford County jail. Wahls stated that he was bringing breakfast to defendant, who was in solitary confinement because of a situation that had happened the day before. When he arrived at her door, defendant was highly agitated, "screaming out the door" and "pacing." Wahls opened the cell door to give defendant breakfast. He was holding a glass of milk in his left hand and two bowls of food in his right hand. He testified that he tried to understand why she was agitated and attempted to explain to her why she had to remain in her cell. Wahls then stated that "[w]hen [defendant] finally reached for her breakfast she grabbed the glass of milk first and threw it into [his] face" by "reach[ing] out with her arm and then flick[ing] her wrist," which caused the cup to go "all over [his] face and down [his] whole uniform." He said that the events between "handing the cup to the time that the milk was on [him]" happened "[a]lmost instantly."

¶ 9 During cross-examination, defense counsel played a surveillance video of the encounter. Wahls confirmed that this video showed that defendant was "animated" and "gesturing with her hands." He then confirmed that defendant "hand[ed] a note out" to him and then "took one of the bowls" from his right hand. At the time, defendant was "still talking" and "pointing" when Wahls "reached out to hand her the milk." He agreed that the video showed that "[t]he first thing that [defendant] did after [he] reach[ed] out with [his] hand is look down," after which he "star[ed] down at the floor due to having milk run down [his] face." He admitted that the "video does not" show defendant "ripping something out of [his] hand," but he explained that "[t]he quality of the video is not that good" and "[d]ue to the angle where [he was] standing in the doorway you can't see [defendant's] hand toss, being that [his] body was blocking that view of the

- 3 -

angle of the camera." He confirmed that the events happened the way he initially described, even if the video did not fully show it.

¶ 10 Cory Reneau, another correctional officer, testified that after he "pass[ed] breakfast to somebody else," he "made [his] way back over to the yelling" between Wahls and defendant. He testified that, "through the window" of the cell door, he saw "Deputy Wahls hand [defendant] the breakfast bowls and a glass of milk, and [defendant] threw the milk at Deputy Wahls striking him in the face and then all over his chest area." On cross-examination, Reneau testified that the video "doesn't show [defendant's] arm coming back up" to throw the glass of milk, but it does show her "look[ ] down at the floor" before Wahls "shut[ ] the door." He agreed with defense counsel that theoretically, it "would make sense that [defendant] is looking down at the floor at that time" if "what happened is Deputy Wahl reached out with a glass of milk in his left hand, and her arm is coming down and it spills." However, he stated that is not what actually happened.

¶ 11 The State then rested. Defense counsel informed the trial court that defendant wanted to testify; however, since it was already late afternoon, the court continued the trial to the next morning. During a recess, defendant had informed her counsel that she had a child custody hearing the next day in Will County. After counsel informed the court, the court explained to defendant that she was required to appear at her trial and gave her trial *in absentia* warnings. Defendant confirmed that she understood.

¶ 12 Defendant failed to appear the next day. Because the defense had no evidence other than her testimony to present, the trial proceeded to closing arguments and instructing the jury. In closing, defense counsel stated that the central issue "is a credibility contest in the sense that there's two people saying two different things happened." The jury found defendant guilty of aggravated battery. The court set a sentencing hearing for August 31, 2022.

¶ 13 On July 20, 2022, Moor moved to withdraw, citing "[i]rreconcilable differences," "communication issues," and defendant's "fail[ure] to fulfill her financial obligations to counsel." The trial court granted the motion on August 15, 2022.

¶ 14 Defendant failed to appear at her sentencing hearing on August 31, 2022. The trial court issued a warrant for her arrest.

¶ 15 Almost a year later, on July 24, 2023, after her arrest, defendant appeared for a status hearing and informed the trial court that she was in the process of retaining a new attorney. On August 3, 2023, defendant's new attorney, Saundra Gavazzi, entered her appearance, and the court rescheduled the sentencing hearing to September 18, 2023. At a bond reduction hearing on August 9, 2023, defense counsel informed the court that she had not yet requested the trial transcript, nor did she know the full extent of defendant's criminal history.

¶ 16 On September 7, 2023, defense counsel filed a motion to continue the sentencing hearing. The motion stated that in the interim between defendant's guilty verdict in this case on July 12, 2022, and her initially scheduled sentencing on August 31, 2022, defendant was arrested in Will County, Illinois, on July 31, 2022. The motion further alleged that in the Will County case, the judge ordered a fitness evaluation and found her unfit to stand trial on October 7, 2022. Defendant was involuntarily committed for mental health treatment at Elgin Mental Health Center on January 18, 2023. Defense counsel in the present case informed the trial court that as of filing the motion on September 7, 2023, defendant remained unfit and needed an updated evaluation to determine her fitness to participate in sentencing proceedings.

¶ 17 On September 14, 2023, the trial court granted defendant's motion and ordered a new fitness evaluation. Defense counsel also informed the court that she intended to file a motion for leave to file a motion for a new trial. The court invited counsel to file a written motion

requesting such relief. The sentencing hearing was then continued to October 16, 2023.

¶ 18    Since the new fitness report was not yet completed by October 16, 2023, the trial court continued the sentencing hearing to November 17, 2023. The report was completed by Dr. Ryan Finkenbine on November 2, 2023, who concluded that as of his interview on October 31, 2023, defendant was fit to be sentenced. Based on this evaluation, defendant's counsel withdrew her motion as to fitness.

¶ 19    On November 15, 2023—three months after being retained by defendant—defense counsel filed a motion for leave to file a motion for a new trial. The motion simply alleged that defendant "faces significant prejudice if she is disallowed from filing a Motion for New Trial." Defense counsel failed to attach a proposed motion for a new trial, later explaining that she "did not want to go out of [her] way and prepare one and cost—create expenses for the family in this case if this motion for leave to file was eventually denied." Defense counsel also admitted at a status hearing on November 17, 2023, that she had not yet received the trial transcript. On November 27, 2023, the trial court denied the motion, stating that "we're extraordinarily past th[e] time limitation" for a motion for a new trial. The court noted that it did not see any reason to allow such a late motion where "the greatest miscarriage of justice" was that defendant "chose to absent herself" from the second day of trial.

¶ 20    On December 7, 2023, defense counsel filed a motion to reconsider the November 27 order. Counsel argued, in part, that defendant may have been unfit upon, and immediately after, her trial in this matter. Additionally, because defendant was arrested in Will County on July 30, 2022, and was not released from custody, defendant could not be faulted for failing to appear for the past year. Counsel also argued that her own failure to attach the proposed motion for a new trial could not be grounds for denying the motion for leave, as she "cannot be expected to argue

and prepare a motion for new trial when she's yet to be granted leave to file as much." This was particularly so, according to counsel, where she did not have the trial transcript because defendant was indigent and counsel "made the economic decision to refrain from purchasing the trial transcript pending the granting or denial of [defendant's] motion." Counsel also argued that defendant's prior counsel, Moor, was ineffective for failing to file a timely motion for a new trial and failing to introduce "numerous pieces of evidence which were significant to [defendant's] defense," though counsel did not identify any specific evidence.

¶ 21        At the sentencing hearing on December 8, 2023, the trial court reviewed defendant's motion to reconsider. The court found counsel's claim that defendant's nonappearance on the second day of trial was due to her unfitness "pure conjecture." The court also reasoned that since counsel's appointment in August, she had "ample opportunity to obtain a trial transcript and review it." The court agreed that defendant's previous counsel was deprived of the opportunity to present evidence only by defendant's nonappearance on the second day of trial. The court explained that defendant weighed her options and "chose to absent herself from a felony trial, jury trial, to attend to some child matter case *** in another county." The court ultimately denied the motion to reconsider.

¶ 22        The trial court then proceeded to sentencing and sentenced defendant to four years in the Illinois Department of Corrections with one year of mandatory supervised release.

¶ 23        This appeal followed.

¶ 24                        II. ANALYSIS

¶ 25        On appeal, defendant raises two arguments: (1) the State failed to prove beyond a reasonable doubt that defendant knowingly threw a cup of milk in Wahls's face and (2) defendant received ineffective assistance of counsel at the posttrial stage from both Moor and Gavazzi.

Defendant requests that this court reverse her conviction outright or, alternatively, remand for a new posttrial hearing and an opportunity to file a motion for a new trial.

¶ 26                    A. Sufficiency of the Evidence

¶ 27          When a defendant challenges the sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Gray*, 2017 IL 120958, ¶ 35. "A criminal conviction will not be set aside on a challenge to the sufficiency of the evidence unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Jackson*, 2020 IL 124112, ¶ 64.

¶ 28          It is the function of the trier of fact to determine the credibility of the witnesses, decide the weight to be given to their testimony, resolve conflicts in the evidence, and draw reasonable inferences from that evidence. *People v. Baker*, 2022 IL App (4th) 210713, ¶ 35. These credibility determinations are entitled to great weight. *Baker*, 2022 IL App (4th) 210713, ¶ 35. In contrast, "[i]t is not the function of the reviewing court to retry the defendant" and thus an appellate court will not "substitute its judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of witnesses." *Jackson*, 2020 IL 124112, ¶ 64.

¶ 29          To convict defendant of aggravated battery as charged, the State had to prove that defendant (1) committed a battery against Wahls, (2) knowing that he was a correctional institution employee performing his official duties. 720 ILCS 5/12-3.05(d)(4)(i) (West 2020). In order to prove battery, defendant had to (1) knowingly, (2) without legal justification, (3) make physical contact of an insulting or provoking nature with Wahls. 720 ILCS 5/12-3(a) (West 2020). Defendant does not contest that she knew Wahls was a corrections officer performing his official duties, she had no legal justification for battery, and that spilling milk on someone constituted

- 8 -

physical contact of an insulting nature. The crux of the issue is whether this contact was knowing or accidental.

¶ 30    Defendant argues that the State's theory that defendant threw the cup at Wahls is contradicted by the video evidence. The State contends that defendant's challenge to the sufficiency of the evidence is an attempt to get this court to reweigh the evidence that the jury already fully considered. We agree with the State. The video does not clearly show defendant's and Wahls's hands at the relevant moment. Wahls and Reneau both testified that defendant threw the milk at Wahls. In closing arguments, defense counsel explicitly said the case involved a "credibility contest." In finding defendant guilty of the charged aggravated battery, the jury was entitled to find the testimony of both corrections officers credible. We will not substitute our own judgment for that of the jury. Defendant's argument that the "simpler and more logical explanation" is that defendant accidentally knocked the milk out of Wahls's hand while gesturing is unpersuasive, as the jury "is not required to *** search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *Jackson*, 2020 IL 124112, ¶ 70. Reviewing all the evidence in the light most favorable to the prosecution, the evidence was not so improbable, unsatisfactory, or unreasonable as to justify a reasonable doubt of defendant's guilt.

¶ 31                    B. Ineffective Assistance of Counsel

¶ 32    Defendant argues that both Moor and Gavazzi were ineffective: Moor for failing to file a motion for a new trial and Gavazzi for failing to file a merits-based posttrial motion because she never obtained a free copy of the trial transcript.

¶ 33    Claims of ineffective assistance of counsel are governed by the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To sustain a claim of ineffective assistance under *Strickland*, a defendant must show that his or her counsel's performance was deficient and

that such deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687. To prove prejudice under *Strickland*, defendant must establish that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. However, *Strickland* noted that there are situations where prejudice "is so likely that case-by-case inquiry into prejudice is not worth the cost." *Strickland*, 466 U.S. at 692. In *Strickland*'s companion case, *Cronic*, 466 U.S. 648, the United States Supreme Court identified only three situations that justify such an exception to *Strickland*'s prejudice requirement: (1) if there is a "complete denial of counsel," (2) "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," or (3) if "counsel is available to assist the accused during trial, [but] the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of trial." *Cronic*, 466 U.S. at 659-60. All three exceptions present a high bar.

¶ 34    Defendant argues that both of her attorneys failed to subject the prosecution's case to meaningful adversarial testing—the second *Cronic* exception—and therefore she does not have to establish prejudice to present a successful claim of ineffective assistance of counsel. Under this exception, "it is not enough that counsel failed to oppose the prosecution 'at specific points' in the proceeding." *People v. Cherry*, 2016 IL 118728, ¶ 26 (quoting *Bell v. Cone,* 535 U.S. 685, 697 (2002)). "Rather, 'the attorney's failure must be complete,' meaning that 'counsel failed to oppose the prosecution throughout the *** proceeding as a whole.' " *Cherry*, 2016 IL 118728, ¶ 26 (quoting *Bell*, 535 U.S. at 697). In *Cherry*, our supreme court noted that "in the more than 30 years since *Cronic* was decided, this court has found *per se* ineffectiveness under the second *Cronic* exception only twice," in cases where defense counsel readily admitted the defendants' guilt. *Cherry*, 2016 IL 118728, ¶ 27.

¶ 35    There is an important distinction between "the category of poor representation" and "no representation at all." *Cherry*, 2016 IL 118728, ¶ 29. This is where the difference between *Strickland* and *Cronic* lies—a difference "not of degree but of kind." *Bell*, 535 U.S. at 697. Where defendant's argument "is not that his counsel failed to oppose the prosecution throughout the \*\*\* proceeding as a whole, but that his counsel failed to do so at specific points," it is "of the same ilk as other specific attorney errors we have held subject to *Strickland*'s performance and prejudice components." *Bell*, 535 U.S. at 697-98. Put more simply, " '*Cronic* only applies if counsel fails to contest *any* portion of the prosecution's case; if counsel mounts a partial defense, *Strickland* is the more appropriate test.' " (Emphasis in original.) *Cherry*, 2016 IL 118728, ¶ 26 (quoting *United States v. Holman,* 314 F.3d 837, 839 n.1 (7th Cir. 2002)).

¶ 36    As to Moor, defendant argues that his failure to file a motion for a new trial falls under the second *Cronic* exception. As a threshold matter, defendant argues that Moor's performance at *trial* is irrelevant to whether he was effective *posttrial*. However, this argument is unpersuasive and unsupported. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (stating the appellant's brief "shall contain \*\*\* citation of the authorities \*\*\* relied on.") Defendant cites boilerplate language for the proposition that the posttrial stage is a critical stage where defendants have the Sixth Amendment right to counsel. That is undeniable; however, the posttrial stage, although critical, is just that—a *stage* of the whole criminal proceedings. We have found no support for the contention that under *Cronic*, the performance of the same counsel is considered separately at the trial and posttrial stages. *Cronic*'s second exception applies only in extreme circumstances when " 'counsel failed to oppose the prosecution throughout the \*\*\* *proceeding as a whole*.' " (Emphasis added). *Cherry*, 2016 IL 118728, ¶ 26 (quoting *Bell*, 535 U.S. at 697). We thus decline to consider Moor's trial and posttrial actions separately.

¶ 37　　　　　Moreover, defendant's claim of ineffectiveness hinges solely on Moor's failure to file a posttrial motion for a new trial. *Cronic*'s framework does not apply to claims of specific attorney error. This court has previously "decline[ed] to presume prejudice in a situation where the filing of the motion is a matter of discretion," noting that a "general failure to file [such] a motion *** does not *per se* amount to ineffective assistance of counsel, as some basis must exist to make the motion." *People v. Bailey*, 364 Ill. App. 3d 404, 408 (2006). "[C]ounsel's failure to raise [such an] issue constitutes ineffective assistance only where such failure prejudiced defendant." *Bailey*, 364 Ill. App. 3d at 408. Thus, a claim of ineffectiveness based only on Moor's failure to file a motion for a new trial necessarily fails under *Cronic* and should instead be analyzed under *Strickland*. However, defendant does not alternatively argue prejudice under *Strickland*—indeed, her reply brief makes it clear that she is arguing ineffectiveness *only* under *Cronic*—and has thus forfeited such an argument. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited.").

¶ 38　　　　　Under *Cronic*, there can be no argument that Moor *entirely* failed to represent defendant throughout the proceeding as a whole. He made opening and closing arguments, cross-examined the State's two witnesses, objected throughout trial, and moved for a directed verdict at the close of the State's case. He clearly subjected the prosecution's case to meaningful testing. See *People v. Abdullah*, 336 Ill. App. 3d 940, 951 (2002), *modified on denial of reh'g* (Mar. 13, 2003) (stating where defense counsel called witnesses and made a closing argument, "he subjected the prosecution's case to *some* meaningful adversarial testing, even if, as defendant argues, he could and should have done additional things" (emphasis in original)). Moor thus did not provide ineffective assistance of counsel under the second *Cronic* exception.

¶ 39　　　　　For the same reasons, defendant's claim of ineffective assistance under the second

*Cronic* exception as to Gavazzi, her subsequent posttrial counsel, also fails. Defendant argues that Gavazzi was ineffective for her failure to obtain a free copy of the trial transcript, which left her unable to substantiate her arguments. Again, this challenges a specific attorney error, not her representation of defendant throughout the entire posttrial proceeding. Gavazzi adamantly argued in multiple posttrial hearings that defendant's fitness both to be tried and sentenced was doubtful and that Moor was ineffective, so she did provide *some* representation. "[E]ven if it *is* true" that Gavazzi should have ordered the trial transcripts, her failure to do so "hardly rises to the level of 'entirely fail[ing] to subject the prosecution's case to meaningful adversarial testing.' " (Emphasis in original.) *Cherry*, 2016 IL 118728, ¶ 29 (quoting *Bell*, 535 U.S. at 697). "On the contrary, if established, such a failure would fall squarely in the category of poor representation, not 'no representation at all.' " *Cherry*, 2016 IL 118728, ¶ 29 (quoting *People v. Caballero*, 126 Ill. 2d. 248, 267 (2002)). This claim is thus also "governed not by *Cronic* but by *Strickland*." *Cherry*, 2016 IL 118728, ¶ 29. Again, defendant does not argue that there was prejudice under *Strickland* and has thus forfeited any such argument.

¶ 40        Defendant alternatively argues that the lack of trial transcripts created a situation in which no competent attorney could provide effective assistance, under the third *Cronic* exception. This argument also misses the mark by defining the circumstances too narrowly. As defendant argues under the second exception, the issue is not that Gavazzi *could* not have ordered the transcripts, it is that she *did* not. Defendant concedes there was no actual barrier to obtaining the trial transcripts, as Gavazzi could have obtained them for free because of defendant's indigence. Clearly, another competent attorney could have done so and been able to provide effective assistance. This circumstance thus does not fall under the third *Cronic* exception.

¶ 41                              III. CONCLUSION

¶ 42          For the reasons stated, we affirm the trial court's judgment.

¶ 43          Affirmed.