# Illinois Official Reports

## Appellate Court

---

### *People v. Scott*, 2019 IL App (1st) 163022

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD SCOTT, Defendant-Appellant. |
| District & No. | First District, First Division<br>No. 1-16-3022 |
| Filed<br>Rehearing denied | September 30, 2019<br>December 9, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-CR-4637; the Hon. James B. Linn, Judge, presiding. |
| Judgment | Affirmed and remanded. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Daniel T. Mallon, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Miles J. Keleher, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE PIERCE delivered the judgment of the court, with opinion.<br>Presiding Justice Griffin and Justice Walker concurred in the judgment and opinion. |

¶ 1    Following a bench trial, defendant Ronald Scott was convicted of delivery of more than 1 but less than 15 grams of heroin (720 ILCS 570/401(c)(1) (West 2016)). On appeal, he argues that the State failed to lay a sufficiently complete foundation for the admissibility of the heroin. Alternatively, he argues for the first time on appeal, and the State concedes, that his mittimus should be corrected to reflect the proper offense for which he was convicted. For the reasons that follow, we affirm the judgment of the circuit court of Cook County and remand to the circuit court to permit defendant to file a motion pursuant to Illinois Supreme Court Rule 472(a), (e) (eff. May 17, 2019).

¶ 2                                              I. BACKGROUND

¶ 3    Defendant was charged with one count of delivery of more than 1 but less than 15 grams of heroin (720 ILCS 570/401(c)(1) (West 2016)) and one count of delivery of more than 1 but less than 15 grams of heroin within 1000 feet of a school (*id.* § 407(b)(1)). Prior to trial, defendant moved to exclude the heroin, arguing that the initial narcotics investigation report drafted by the police estimated that the heroin weighed 0.6 grams, while the Illinois State Police chemist intended to testify at trial that the heroin weighed 1.09 grams. The circuit court denied the motion to exclude, and the matter proceeded to a bench trial.

¶ 4    Chicago police officer Cobb[1] testified that on February 21, 2016, he was working as an undercover buy officer. At 1:46 p.m., he approached the intersection of West Augusta Avenue and North Long Street on foot. Officer Cobb approached defendant and asked, "You working?" Defendant responded, "You want something, too?" Officer Cobb said "Three" and observed defendant retrieve small items from a clear plastic bag that defendant was holding in his hand. Officer Cobb handed defendant three premarked $10 bills, and defendant handed him three clear capsules containing a white powder that Officer Cobb believed to be heroin. After leaving, Officer Cobb radioed his team that the "suspect narcotics transaction was a positive" and provided a description of defendant and his clothing. After other officers detained defendant, Officer Cobb drove past the scene and identified defendant as the person who sold him the capsules. He then drove back to the police station with the capsules, where they were inventoried and assigned inventory No. 13631143. The capsules were then placed in a heat-sealed bag, which was then placed in a narcotics vault. Officer Cobb identified People's exhibit. No. 1 as the inventory bag containing the suspected narcotics. He testified that the bag was in the same or substantially similar condition as when he last saw it, except that the bag itself had been placed inside a different clear plastic bag with two different stickers on it with numbers and serial numbers. Also on February 21, 2016, Officer Cobb was shown a photograph array from which he identified defendant as the person who sold him the capsules. The State published a video of the transaction to the circuit court, and Officer Cobb identified himself and the defendant in the video. On cross-examination, Officer Cobb testified that he weighed the capsules, which came to an estimated weight of 0.6 grams. On redirect examination, Officer Cobb clarified that he did not place the capsules on a scale but instead used a chart that estimates weight based on the size of a capsule.

---

[1]Officer Cobb's first name does not appear in the record on appeal.

¶ 5        Chicago police officer Lacko[2] testified that on February 21, 2016, he was working as a surveillance officer as part of an undercover buy team. He was in an unmarked police vehicle with a handheld video recorder. He testified that Officer Cobb was going to make a buy. Officer Lacko observed Officer Cobb approach the defendant and have a short conversation, after which Officer Cobb handed defendant premarked currency and defendant dropped unknown items into Officer Cobb's hand. Officer Lacko recorded the transaction with his video camera. After the transaction, he heard over his radio that Officer Cobb made a positive narcotics transaction. Officer Lacko continued to observe defendant for 30 minutes after the transaction. Officer Lacko made an in-court identification of defendant as the person whom he saw hand Officer Cobb the capsules.

¶ 6        Chicago police officer Beluso[3] testified that he was working on the undercover buy team on February 21, 2016. He did not observe the transaction between defendant and Officer Cobb. After Officer Cobb confirmed over the radio that a narcotics transaction occurred and provided a description of defendant, Officer Beluso made contact with defendant. Officer Beluso made an in-court identification of defendant as the person with whom he had spoken. After Officer Beluso asked defendant to approach his vehicle, defendant fled, and Officer Beluso gave chase. After catching up to defendant, Officer Beluso performed a soft stop, which he described as "very casual, easy going conversation." He did not perform a pat down or search of defendant. Defendant provided his name, and Officer Beluso used his computer to search for defendant. After the encounter, Officer Beluso filled out an investigatory stop report.

¶ 7        Forensic scientist Tiffany Neal testified that she was employed by the Illinois State Police Forensic Science Center in Chicago. She specialized in drug chemistry, and defendant stipulated to her qualifications to testify as an expert. She identified People's exhibit No. 1 as the evidence for laboratory case No. C-164104. She stated that she could identify it as something that she had worked on by the laboratory case number, her initials, and the date. She stated that she received the evidence in a heat-sealed condition from an evidence technician on February 24, 2016, at the drug chemistry vault. After receiving the evidence, she locked it inside her drug chemistry work station until she could analyze it. She recognized the markings on the outside of the evidence bag because she had analyzed and tested what was inside the bag. She testified that she opened the bag and verified that the contents were consistent with what was written on the inventory sheet. She weighed the items, which weighed 1.09 grams. Her testing confirmed the presence of heroin. After testing the items, she resealed the evidence into new plastic bags and placed the new bags into a plastic bag, which was then resealed. She labeled the bag with a case number, the date, and her initials and placed it in the original evidence bag, which was then heat-sealed. She initialed the bag, dated it, and returned it to the drug chemistry vault. She testified that People's exhibit No. 1 appeared to be in the same or substantially the same condition as it was when she completed her analysis.

¶ 8        The State then moved to admit the heroin into evidence. Defendant renewed his pretrial motion to exclude the heroin, which the circuit court denied. The State rested its case-in-chief. Defendant made an oral motion for a directed finding, arguing that the discrepancy between the estimated weight on the initial narcotics investigation report drafted by the police and Neal's testimony suggested that the heroin she tested was not what was recovered by the police.

[2]Officer Lacko's first name does not appear in the record on appeal.
[3]Officer Beluso's first name does not appear in the record on appeal.

- 3 -

Defendant further argued that the State failed to show a sufficient chain of custody for the heroin because the State did not present any testimony from the evidence technician from whom Neal received the evidence. The circuit court denied the motion for a directed finding.

¶ 9 Defendant called his mother, Gwenda Scott, as a witness. She testified that defendant arrived at her home around 1:00 p.m. on February 21, 2016. He was talking with his brothers and watching television. She did not see or hear him leave until after 6:30 p.m., after they ate dinner together.

¶ 10 After hearing closing arguments from counsel, the circuit court took the matter under advisement. On August 8, 2016, the circuit court found defendant guilty of delivery of more than 1 but less than 15 grams of heroin. The circuit court found that the State failed to prove beyond a reasonable doubt that the transaction took place within 1000 feet of a school. At sentencing, there was no dispute that, due to his background, defendant was Class X mandatory. He was sentenced to eight years' imprisonment. Defendant filed a posttrial motion raising several issues, including that the circuit court erred by admitting the heroin into evidence. Defendant's posttrial motion was denied, and he filed a timely notice of appeal.

¶ 11 II. ANALYSIS

¶ 12 On appeal, defendant argues that the circuit court abused its discretion by admitting the heroin into evidence where the State failed to lay a sufficiently complete foundation for its admission. He argues that the State failed to establish that People's exhibit No. 1 was labeled with the inventory number that Officer Cobb testified was given to the recovered capsules. He further argues that Neal did not testify that she tested a substance with that inventory number. He argues that that discrepancy between the estimated weight of the substance and the weight testified to by Neal suggests that the substance tested by Neal was not the same substance recovered and inventoried by Officer Cobb. Finally, he argues that the State did not meet its burden of establishing a sufficiently complete chain of custody. Defendant does not raise any issue on appeal regarding the circuit court's denial of his motion for a directed finding at the close of the State's evidence or advance any argument challenging the sufficiency of the evidence.

¶ 13 The State responds in part that defendant forfeited his chain of custody argument by failing to make a specific objection at trial and by failing to raise a chain of custody argument in his posttrial motion. The State contends that, at trial, defendant only objected to the admissibility of the heroin on the basis of discrepancy between Officer Cobb's estimated weight of the heroin and Neal's measured weight of the heroin.

¶ 14 We agree with the State that defendant has forfeited his chain of custody arguments. "[A] defendant must both specifically object at trial and raise the specific issue again in a posttrial motion to preserve any alleged error for review." *People v. Woods*, 214 Ill. 2d 455, 470 (2005). "If a defendant fails to satisfy either prong of this test, his challenge is considered waived on appeal." *Id.* A finding of forfeiture is "particularly appropriate when a defendant argues that the State failed to lay the proper technical foundation for the admission of evidence, and a defendant's lack of a timely and specific objection deprives the State of the opportunity to correct any deficiency in the foundational proof at the trial level." *Id.*

¶ 15 Here, defendant's sole objection at trial to the admission of the heroin into evidence was that the discrepancy between Officer Cobb's estimated weight of the heroin at 0.6 grams and Neal's measured weight of the heroin at 1.09 grams was so great and unreliable as to make it

inadmissible. Defendant did not make a specific trial objection to the admissibility of the heroin due to a lack of chain of custody: he did not object to the admission of the heroin into evidence on the grounds that Neal failed to identify People's exhibit No. 1 by the inventory number identified by Officer Cobb and did not object that the State failed to establish a sufficiently complete chain of custody by failing to call the evidence technician to testify at trial. Defendant's failure to specifically object at trial to the State's foundation for the admission of the heroin into evidence results in forfeiture.[4]

¶ 16    In his reply, defendant argues that if we deem his chain of custody arguments forfeited, we may nevertheless address his arguments under the doctrine of plain error. He argues that plain error review is appropriate in situations involving a complete breakdown of the chain of custody, which occurred here because the State never showed that the evidence recovered and the evidence tested contained the same unique identifiers.

¶ 17    The plain error doctrine allows a court of review to consider a forfeited error when "(1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). Our first step is to determine whether an error has occurred. As our supreme court explained in *Woods*, when the State seeks to introduce contraband into evidence,

> "[t]he State bears the burden to establish a custody chain that is sufficiently complete to make it improbable that the evidence has been subject to tampering or accidental substitution. [Citations.] The State must show that the police took reasonable protective measures to ensure that the substance recovered from the defendant was the same substance tested by the forensic chemist. [Citation.] Unless the defendant produces evidence of actual tampering, substitution or contamination, a sufficiently complete chain of custody does not require that every person in the chain testify, nor must the State exclude every possibility of tampering or contamination; the State must demonstrate, however, that reasonable measures were employed to protect the evidence from the time that it was seized and that it was unlikely that the evidence has been altered. [Citations.]" *Woods*, 214 Ill. 2d at 467.

¶ 18    " 'Once the State has established the probability that the evidence was not compromised, and unless the defendant shows actual evidence of tampering or substitution, deficiencies in the chain of custody go to the weight, not admissibility, of the evidence.' " *Id.* (quoting *People v. Bynum*, 257 Ill. App. 3d 502, 510 (1994)).

¶ 19    We find that the circuit court did not err by admitting the heroin into evidence because the State laid a sufficiently complete foundation for its admission. Officer Cobb testified that he recognized People's exhibit No. 1 as the inventory bag containing the suspected narcotics and that the bag was in the same or substantially similar condition as when he last saw it, except that the bag itself had been placed inside a different clear plastic bag with two different stickers on it with numbers and serial numbers. He testified that he heat-sealed the bag at the police

---

[4]We note that defendant did argue in his oral motion for a directed finding following the State's case-in-chief that the State failed to establish a sufficiently complete chain of custody for the heroin by failing to call the evidence technician from whom Neal received the heroin as witness. But on appeal, defendant does not argue that the circuit court erred by denying his motion for a directed finding, and he does not argue that the arguments made in support of his motion for a directed verdict amounted to a specific trial objection to the admissibility of the heroin.

station and placed it in the narcotics vault at the police station. Neal testified that People's exhibit No. 1 was the bag that she tested and that she received from an evidence technician from the drug chemistry vault. She testified that the bag was heat-sealed when she received it and that the contents of the bag matched the inventory sheet that accompanied the bag. She testified that the bag was in substantially the same condition as it as was when she returned it to the evidence technicians after completing her testing. We find that the State sufficiently established that reasonable measures were employed to protect the evidence from the time that it was seized and that it was unlikely that the evidence has been altered. To establish a sufficiently complete chain of custody, the State was not required to call every person in the chain to testify at trial. *Woods*, 214 Ill. 2d at 467. Defendant did not come forward with any evidence of actual tampering, substitution, or contamination; his only objection was to the discrepancy between Officer Cobb's estimated weight and Neal's measured weight. Because he did not come forward with evidence of actual tampering, substitution, or contamination, any deficiencies in the chain of custody go to the weight, not admissibility, of the evidence. *Id.* Therefore, the circuit court did not plainly err in admitting the heroin into evidence.

¶ 20 Defendant relies on *People v. Howard*, 387 Ill. App. 3d 997 (2009), to support his argument that the heroin was inadmissible because the State failed to establish a sufficiently complete chain of custody to make it improbable that the evidence had been subject to tampering or accidental substitution. In *Howard*, the defendant argued on appeal that the State failed to lay an adequate foundation for the admissibility of cocaine. At trial, the State presented testimony from a police officer, Officer Gately, who purchased cocaine from the defendant in an undercover buy. The officer testified that he and another officer, Master Sergeant Wellbank, weighed the cocaine on a scale, which showed that it weighed 53 grams, and then packaged the cocaine. Gately identified the cocaine from his initials on the evidence bag into which he had placed the cocaine, as well his identification number and Wellbank's initials, which they had written on the bag. Wellbank also identified the evidence bag as containing his identification number, his initials, and the date of sale. Wellbank placed it in an evidence vault and later drove the cocaine to a crime lab. An officer at the crime lab logged the cocaine and then took the evidence bag to a forensic chemist. The chemist identified the bag as the cocaine he received from the officer at the crime lab and testified that the bag contained cocaine and weighed 51.2 grams.

¶ 21 On appeal, a panel of the Second District concluded that the State failed to lay an adequate chain of custody for the cocaine because "the State failed to provide proper evidence that no accidental substitution of the evidence occurred." *Id.* at 1003-04. The *Howard* court rejected the State's argument "the weight measurements, taken with the initials, badge numbers, and date, are sufficient to show that accidental substitution was improbable." *Id.* at 1005. Instead, the Second District found that "[t]he State would have shown that accidental substitution was improbable only if it showed that it was improbable that the same officers would have handled another bag of white powder of similar weight on that day." *Id.* The court concluded:

> "The State's 'burden [was] to establish a custody chain that is sufficiently complete to make it improbable that the evidence has been subject to tampering or accidental substitution.' *Woods*, 214 Ill. 2d at 467. The initials, badge numbers, date, and weight measurements fail that standard as a matter of law. For us to accept other information as overcoming the weaknesses of that information would require us to become advocates for the State's position. Thus, despite the deference we accord the trial court

under an abuse of discretion standard, we must hold that admission of the exhibit was improper." *Howard*, 387 Ill. App. 3d at 1006.

¶ 22 *Howard*'s conception of the standard for establishing a chain of custody has been criticized and disavowed by other panels of the Second District. In *People v. Blankenship*, 406 Ill. App. 3d 578 (2010), a panel of the Second District criticized *Howard*'s finding that the officers' initials, badge numbers, the date, and the weight measurements failed to make it improbable that the evidence had been subject to tampering or accidental substitution as a matter of law, noting that such a rule "would curb the flexibility that the case law consistently grants the State in establishing a *prima facie* case." *Id.* at 593. The *Blankenship* court reassessed the evidence in *Howard* and concluded that the officers' testimony that they (1) "processed the drugs in the field after seizing them from the defendant" (*id.*), (2) "identified the evidence package by certain markings, *i.e.*, the date, the time, and their initials" (*id.* at 594), and (3) "noted the respects in which the package was different from when they had handled it, specifically that it had been opened by the crime lab, then sealed and marked with initials" (*id.*), was sufficient to show that the police had taken reasonable protective measures to differentiate the cocaine from any other drugs seized by the police. The *Blankenship* court reiterated that it was the defendant's burden to show evidence of actual tampering or substitution and observed that the *Howard* court failed to identify any such evidence. *Id.* Another panel of the Second District disavowed *Howard* "to the extent that *Howard* holds that *** a [unique] identifying number is required as a matter of law" to establish that reasonable protective measures were taken by police. *People v. Anderson*, 2013 IL App (2d) 111183, ¶ 46.

¶ 23 We decline to follow *Howard*'s flawed approach to determining admissibility and instead apply the principles set forth by our supreme court in *Woods*. Here, the State presented testimony from Officer Cobb that People's exhibit No. 1 was what it purported to be: the heroin sold to Cobb by defendant. He testified as to how the contraband was stored and inventoried. Neal testified People's exhibit No. 1 was what evidence she tested. Defendant failed to make any objection at trial to the chain of custody and failed to present any evidence of actual tampering or substitution. While the State may not have presented a perfect chain of custody, it presented sufficient evidence to show that reasonable measures were employed to protect the evidence from the time that it was seized through the time it was analyzed and that it was unlikely that the evidence had been tampered with, substituted, or contaminated. Defendant's objections to the chain of custody go to the weight of the evidence, not its admissibility. Because we find no error in the circuit court's admission of the evidence, defendant is not entitled to any relief under the plain error doctrine.

¶ 24 Finally, defendant argues—and the State concedes—that his mittimus should be corrected to reflect the proper offense for which he was convicted. His argument is simple: the circuit court entered judgment on the charge of delivery of more than 1 but less than 15 grams of heroin within 1000 feet of a school, despite the circuit court's finding that the State failed to prove that the transaction occurred within 1000 feet of a school.

¶ 25 Illinois Supreme Court Rule 472 provides that

"(a) In criminal cases, the circuit court retains jurisdiction to correct the following sentencing errors at any time following judgment and after notice to the parties, including during the pendency of an appeal, on the court's own motion, or on motion of any party:

\* \* \*

- 7 -

(4) Clerical errors in the written sentencing order or other part of the record resulting in a discrepancy between the record and the actual judgment of the court.

\* \* \*

(e) In all criminal cases pending on appeal as of March 1, 2019, or appeals filed thereafter in which a party has attempted to raise sentencing errors covered by this rule for the first time on appeal, the reviewing court shall remand to the circuit court to allow the party to file a motion pursuant to this rule." Ill. S. Ct. R. 472(a)(4), (e) (eff. May 17, 2019).

¶ 26 Here, there is no indication that defendant raised the issue of an error in his written sentencing order before the circuit court, and it has therefore been raised for the first time on appeal. Despite the State's concession, we lack jurisdiction to address defendant's argument. "By rule, defendant must first file a motion in the circuit court requesting the correction of any sentencing errors specified in Rule 472(a)." *People v. Whittenburg*, 2019 IL App (1st) 163267, ¶ 4. Pursuant to Rule 472(e), we remand this matter to the circuit court to permit defendant an opportunity to file a motion to correct the mittimus.

¶ 27                                          III. CONCLUSION

¶ 28 For the foregoing reasons, the judgment of the circuit court is affirmed, and we remand pursuant to Rule 472(e).

¶ 29 Affirmed and remanded.