# Illinois Official Reports

## Appellate Court

---

**People v. Jones, 2021 IL App (3d) 190131**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOEL JONES, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-19-0131 |
| Filed | August 23, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 18-CF-648; the Hon. Norma Kauzlarich, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Douglas R. Hoff, and Miriam Sierig, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Dora A. Villarreal, State's Attorney, of Rock Island (Patrick Delfino, Thomas D. Arado, and Mark A. Austill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE SCHMIDT delivered the judgment of the court, with opinion.<br>Justice Daugherity concurred in the judgment and opinion.<br>Presiding Justice McDade specially concurred, with opinion. |

**OPINION**

¶ 1 A jury found defendant, Joel Jones, guilty of unlawful delivery of a controlled substance. The court sentenced defendant to a term of nine years' imprisonment. On appeal, defendant argues that the State failed to make a *prima facie* case of proper chain of custody of the narcotics in question, such that the admission of narcotics into evidence amounts to reversible error. Separately, he argues that defense counsel rendered ineffective assistance for failing to request a jury instruction pertaining to the evaluation of eyewitness testimony. We affirm.

¶ 2                                          I. BACKGROUND

¶ 3 The State charged defendant via indictment with a single count of unlawful delivery of a controlled substance (720 ILCS 570/407(b)(2) (West 2016)). The indictment alleged that defendant knowingly delivered to a law enforcement agent less than one gram of a substance containing heroin.

¶ 4 Defendant's jury trial commenced on October 30, 2018. Officer Justin Holmes testified that he was working undercover on August 16, 2016, when he placed a phone call to defendant in which he arranged to purchase two bags of heroin. After Holmes arrived at the agreed location, defendant entered his vehicle and placed two bags of heroin on the floor. Holmes handed defendant money. At defendant's direction, Holmes drove a block away, at which point defendant exited the vehicle. Holmes next drove to another location to meet with his supervisor. They "tested the narcotic to make sure [they] didn't get ripped off."

¶ 5 Holmes said the transaction occurred at 4 p.m. and that he had a good opportunity to observe defendant and his physical features. Such observation was part of his training. Further, he was well aware that he would likely have to make an identification of defendant at a potential future trial.

¶ 6 Holmes identified State's exhibit No. 1 as the heroin he purchased. Holmes had sealed the two bags of heroin inside a larger evidence bag. He recognized his handwriting and his signature on the bag. Holmes agreed that the evidence bag itself and one of the bags of heroin had been opened and opined that this had been done by the Illinois State Police crime laboratory. The bags of heroin were otherwise in the same condition as when he purchased them.

¶ 7 On cross-examination, Holmes estimated that he had made 50 controlled purchases of narcotics between 2016 and 2018. Approximately four or five of those purchases were from young black males. Holmes did not take any steps to procure any records relating to the phone number he called to arrange the transaction. There were no photographs or video recordings of the controlled purchase. Holmes did not recall that defendant had any physical features or clothing that made him particularly distinctive.

¶ 8 On redirect, Holmes said that the encounter on August 16, 2016, was not the first time he had seen defendant.

¶ 9 Joni Little testified that she was a forensic scientist with the Illinois State Police forensic science laboratory. Little recognized State's exhibit No. 1 as a package received by her laboratory on September 26, 2016. The bag was in a sealed condition when she received it. Little opened the bag and performed two tests on the contents of one of the inside bags. The

tests were positive for heroin. State's exhibit No. 1 was entered into evidence without objection.

¶ 10    Officer John Johnson testified that he conducted surveillance during the controlled purchase. Using binoculars from approximately 1½ blocks away, Johnson identified defendant as the man who entered Holmes's vehicle. Like Holmes, Johnson had been especially focused on identifying the individual and remembering what he looked like. On cross-examination, Johnson said that he had been involved in hundreds of controlled purchases, some of which involved young black males.

¶ 11    Officer Jose Vargas also conducted surveillance during the controlled purchase. He saw defendant exit Holmes's vehicle. He observed defendant walk approximately a block before entering a residence. Vargas had no doubt that defendant was the person involved in the controlled purchase.

¶ 12    In closing, defense counsel argued that the State's evidence that defendant was the person who participated in the controlled purchase with Holmes was insufficient. He argued that the identification testimony of the three officers was uncorroborated and was rendered less credible by the significant passage of time between the event and trial.

¶ 13    The jury found defendant guilty; the court sentenced him to a term of nine years' imprisonment.

¶ 14                                    II. ANALYSIS

¶ 15    On appeal, defendant argues that the State failed to make a *prima facie* showing of a sufficient chain of custody of the heroin entered into evidence as State's exhibit No. 1. He also argues that defense counsel was ineffective for failing to request a jury instruction pertaining to the evaluation of eyewitness testimony. We address each argument in turn.

¶ 16                                 A. Chain of Custody

¶ 17    Defendant argues that the State's chain-of-custody evidence was deficient in a number of respects. He points out that Holmes did not testify to any facts relating to the transportation, handling, or storage of the evidence in the 41 days between its collection and its receipt at the crime laboratory. He also asserts that neither Holmes nor Little described the evidence with sufficient specificity or utilized a unique inventory number. Defendant concedes that he has forfeited this issue by failing to object at trial and raising it in a posttrial motion. However, he argues that this court should reverse his conviction because the admission of the evidence amounted to plain error.

¶ 18    The plain error doctrine allows a reviewing court to bypass normal forfeiture rules and consider a claim of error despite the appellant's failure to preserve that error below. *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). A party asserting plain error must first show that a clear or obvious error was committed. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). From there, the party must prove that he suffered prejudice as a result of the error, either by showing that the evidence in the case was closely balanced or by showing that the error itself was structural, such that prejudice must be presumed. See *Herron*, 215 Ill. 2d at 182, 185. Accordingly, we begin by considering whether a plain error—that is, a clear or obvious error—was committed.

¶ 19        Where the State has charged a defendant with a controlled substance offense, "[i]t is axiomatic that the State must prove that the material recovered from the defendant and which forms the basis of the charge is, in fact, a controlled substance." *People v. Woods*, 214 Ill. 2d 455, 466 (2005). In order for recovered narcotics—as well as the results of testing of those narcotics—to be admitted into evidence, the State must first make a *prima facie* showing that the chain of custody was sufficient.[1] *Id.* at 468. To make that showing, "the State must demonstrate *** that reasonable measures were employed to protect the evidence from the time that it was seized and that it was unlikely that the evidence has been altered." *Id.* at 467. Further, "a sufficiently complete chain of custody does not require that every person in the chain testify, nor must the State exclude every possibility of tampering or contamination." *Id.*

¶ 20        The *prima facie* showing of sufficient chain of custody is a necessary foundation for the introduction of that evidence. *Id.* at 471. As such, a challenge to the chain of custody is an evidentiary issue, rather than a challenge to the sufficiency of the evidence. *Id.* Where properly preserved, a claim of insufficient chain of custody is, like any other evidentiary challenge, subject to an abuse of discretion standard on review. *E.g.*, *People v. Blankenship*, 406 Ill. App. 3d 578, 588 (2010). That is, the circuit court's admission of the evidence over defense objection will only be deemed error where the court's decision is arbitrary, fanciful, or unreasonable. *People v. Johnson*, 361 Ill. App. 3d 430, 440 (2005).

¶ 21        Of course, that same standard does not apply in the plain error context, where we consider not merely whether an error was committed but whether a clear, obvious, or plain error was committed. Our supreme court in *Woods* described the scenarios in which insufficient chain of custody evidence may rise to this level:

> "[I]n those rare instances where a complete breakdown in the chain of custody occurs—*e.g.*, the inventory number or description of the recovered and tested items do not match—raising the probability that the evidence sought to be introduced at trial was not the same substance recovered from defendant, a challenge to the chain of custody may be brought under the plain error doctrine. When there is a complete failure of proof, there is no link between the substance tested by the chemist and the substance recovered at the time of the defendant's arrest. In turn, no link is established between the defendant and the substance. In such a case, a failure to present a sufficient chain of custody would lead to the conclusion that the State could not prove an element of the offense: the element of possession." *Woods*, 214 Ill. 2d at 471-72.

¶ 22        In the instant case, Holmes testified that he purchased two small bags that purportedly contained heroin from defendant, immediately thereafter met with his supervisor, field-tested the contents, and placed the two purchased bags into a larger evidence bag. Holmes sealed the evidence bag and signed his name. Little testified that she received the evidence bag in sealed condition and that it contained therein two individual bags. Both Holmes and Little testified that State's exhibit No. 1 was the package they had dealt with.

---

[1]Even where the State has made the required *prima facie* showing, a defendant may rebut that showing by presenting evidence of actual tampering, substitution, or alteration. *Woods*, 214 Ill. 2d at 468. As defendant has made no such claim in this case, the admissibility of the heroin turns only on whether the State made the required initial showing.

¶ 23    While defendant emphasizes the 41 days between collection of the narcotics and testing in the crime laboratory, and the purportedly myriad possibilities that interlude created for tampering, it is well settled that

> "when no positive evidence of tampering or other contamination exists, the proponent of the evidence can replace a missing link, created when one or more custodians of the evidence do not testify, with evidence (1) that the evidence left the hands of one testifying custodian in a sealed envelope or other container and arrived in the hands of the next testifying custodian still in a sealed container, and (2) that the identifying number or code on the container sent out matches that on the container received." *Johnson*, 361 Ill. App. 3d at 441-42.

To be sure, the bag in this case was apparently marked only with Holmes's signature, rather than a unique identifying number. Nevertheless, the sealed bag, that signature, and the similar description of two smaller bags served to tie the evidence collected by Holmes with that tested by Little. Accordingly, we cannot say that there was "a complete breakdown in the chain of custody" or that there is "no link between the substance tested by the chemist and the substance recovered." *Woods*, 214 Ill. 2d at 471-42. It follows that no clear, obvious, or plain error was committed. See *People v. Echavarria*, 362 Ill. App. 3d 599, 604 (2005) ("We conclude the issue of the sufficiency of the chain-of-custody evidence has been forfeited and the actual evidence presented in this case to have met the bare minimum standard for sufficiency enunciated in *Woods*.").

¶ 24    In reaching this conclusion, we acknowledge that defendant has relied heavily on *People v. Howard*, 387 Ill. App. 3d 997 (2009), and *People v. Cowans*, 336 Ill. App. 3d 173 (2002), in making his argument—both cases in which the reviewing court found the chain of custody insufficient. In *Howard*, the court held that the failure to use a unique identification number rendered the chain of custody insufficient, despite the presence of the officer's initials and badge number and the date on the sealed evidence bag, as well as the recording of the weight of the bag. *Howard*, 387 Ill. App. 3d at 1005. The court expressed concern that the officers might "have handled another bag of white powder of similar weight on that day." *Id.* In *Cowans*, the court found the chain of custody insufficient where the forensic scientist provided no description of the "size, shape, or color of the items received," even though there was evidence that the inventory number matched. *Cowans*, 336 Ill. App. 3d at 178.

¶ 25    Initially, both *Howard* and *Cowans* have been roundly criticized by other courts. *People v. Anderson*, 2013 IL App (2d) 111183, ¶ 46; *Blankenship*, 406 Ill. App. 3d at 593-96; *People v. Scott*, 2019 IL App (1st) 163022, ¶¶ 22-23; *Johnson*, 361 Ill. App. 3d at 442-43; *People v. Foster*, 354 Ill. App. 3d 564, 570 (2004). More importantly, neither of those cases concerned unpreserved claims, and thus neither applied the *Woods* standard as we do here. It is therefore not strictly necessary that we join the chorus of courts condemning those decisions. It is sufficient to say that they are not relevant to the instant appeal. Having found no plain error, we must honor defendant's forfeiture.

¶ 26                                          B. Jury Instructions

¶ 27    Defendant also argues that counsel provided ineffective assistance at trial for failing to request a jury instruction relating to eyewitness identification. Illinois Pattern Jury Instructions, Criminal, No. 3.15 (approved July 28, 2017) (hereinafter IPI Criminal No. 3.15) instructs the jury as follows:

"When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including, but not limited to, the following:

[1] The opportunity the witness had to view the offender at the time of the offense.

[2] The witness's degree of attention at the time of the offense.

[3] The witness's earlier description of the offender.

[4] The level of certainty shown by the witness when confronting the defendant.

[5] The length of time between the offense and the identification confrontation."

Defendant argues that defense counsel was deficient for failing to request this instruction because his primary defense was that the officers had misidentified defendant. He contends that a reasonable probability exists that he would have been found not guilty had the jury been so instructed.

¶ 28    To demonstrate that counsel provided constitutionally ineffective assistance, a defendant must demonstrate both that counsel's performance was deficient and that the defendant suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In determining whether counsel's performance was deficient, a reviewing court must indulge a strong presumption that counsel's performance was the product of a sound trial strategy. *Id.* at 689. Prejudice is shown where a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694.

¶ 29    The decision whether to request a certain jury instruction is generally a matter of trial strategy. *E.g.*, *People v. Mister*, 2016 IL App (4th) 130180-B, ¶ 97. Here, defense counsel's strategy in not requesting IPI Criminal No. 3.15, while still challenging the credibility of the officers' identification, is obvious. IPI Criminal No. 3.15 lists five factors to be considered in evaluating an eyewitness identification. Three of those factors clearly favor the State. Holmes had an opportunity to observe defendant up close and for an extended period when he shared a front seat with him (factor 1). Each of the three officers testified that they were paying especially close attention to defendant, knowing that they would likely have to identify him in court (factor 2). And none of the officers expressed any uncertainty or equivocation in their identification (factor 4). By intentionally declining to have that instruction delivered, defense counsel was able to argue the shortcomings of the identifications (factors 3 and 5) while not calling any attention to factors that would actually hurt his case. As this was plainly a sound trial strategy, we cannot say that counsel's performance was deficient.

¶ 30    We would note in closing that, even if counsel's failure to request the jury instruction could be deemed deficient performance, defendant would be unable to demonstrate any prejudice. As explained, the factors listed in the jury instruction actually do more to bolster the officers' identifications than to undermine it. Defense counsel, through his cross-examinations and arguments, made the credibility of those identifications the central issue in the case. In turn, those identifications were presumably the central question in the jury's deliberations. The jury concluded that the identifications were credible and found defendant guilty. Nothing about IPI Criminal No. 3.15 raises a probability, reasonable or otherwise, that the jury would have reached a different conclusion had that instruction been delivered.

¶ 31                                         III. CONCLUSION

¶ 32          For the foregoing reasons, we affirm the judgment of the circuit court of Rock Island County.

¶ 33          Affirmed.

¶ 34          PRESIDING JUSTICE McDADE, specially concurring:

¶ 35          I concur with the affirmance of defendant's conviction because we reach that result by following established precedent. I write separately to note that this decision is a textbook exercise in the employment of technicalities and presumptions (*supra* ¶¶ 17-25) that insulate the State from its failure to prove, beyond a reasonable doubt, that the substance confiscated from the defendant is the same substance that was tested in the crime lab, while simultaneously holding defendant to the letter of the applicable forfeiture and plain error precedent (*People v. Herron*, 215 Ill. 2d 167 (2005), and its progeny). The State failed to follow the appropriate chain of custody of the contraband, and as a result of that failure and of defense trial counsel's failure to preserve the issue for this court's consideration, defendant stands convicted of unlawful delivery of a substance he has not been proven to have possessed.