2025 IL App (1st) 240196-U

Nos. 1-24-0196 and 1-24-0197 (cons.)

Order filed November 20, 2025

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Nos.   22 CR 04783 |
| | ) |        22 CR 04784 |
| BRANDON MCLAURIN, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Mariano Reyna, |
| | ) | Judge, presiding. |

_____

PRESIDING JUSTICE NAVARRO delivered the judgment of the court.
Justices Lyle and Quish concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's convictions for delivery of a controlled substance over his contentions that insufficient evidence identified him as the perpetrator and his trial counsel provided ineffective assistance.

¶ 2    Following a jury trial, defendant Brandon McLaurin was found guilty of two counts of delivery of a controlled substance and sentenced to concurrent terms of two years' probation. On appeal, defendant contends that the State failed to prove his identity as the offender and that his

trial counsel was ineffective for failing to request a jury instruction regarding identification testimony. We affirm.

¶ 3     Defendant was charged in separate indictments with one count each of delivery of less than one gram of a controlled substance, specifically, cocaine or an analog thereof (720 ILCS 570/401(d) (West 2020)). Defendant proceeded to a single trial on the two counts.

¶ 4     Chicago police officer Robert Zieman testified that on September 7, 2021, he acted as an undercover buy officer in a narcotics investigation near North State Street and West Illinois Street in Chicago. As Officer Zieman approached the intersection, he was "waved over" by an individual whom he identified in court as defendant. Officer Zieman spoke to defendant about a price for narcotics and agreed to buy one "rock" of crack cocaine. Officer Zieman then followed defendant to an underpass, where they walked down a few stairs. There, defendant retrieved "a clear, knotted baggie with [a] white rock-like substance" from the front of his waistband and tendered the baggie to Officer Zieman, who gave defendant $20 in prerecorded bills. Officer Zieman put the baggie in his pocket and left. He signaled to the surveillance team that he purchased narcotics and returned to his vehicle, where he radioed a detailed description of defendant, including his clothing.

¶ 5     On the same day, Officer Zieman inventoried the narcotics at a police facility. He also viewed a photo array, from which he identified defendant as the person who sold him the narcotics.

¶ 6      On September 8, 2021, Officer Zieman returned to the same location as an undercover buy officer and saw defendant with other individuals. Officer Zieman approached defendant, who, according to Officer Zieman, recognized him. Officer Zieman asked to buy "three for twenty ***
instead of just the one." Defendant told Officer Zieman to follow him to a nearby parking lot. There, defendant retrieved a large baggie containing multiple smaller baggies from his waistband

and gave Officer Zieman three baggies in exchange for $20 in prerecorded bills. Officer Zieman left and signaled to the surveillance team that he had made a purchase. He then returned to his vehicle and radioed defendant's description, noting defendant was the same person from the day before. Officer Zieman again inventoried the narcotics at a police facility.

¶ 7    On November 26, 2021, Officer Zieman was working as a surveillance officer near Illinois and State, where he recognized defendant from his face and his neck tattoos. Other officers arrested defendant. Officer Zieman approached in a vehicle, observed defendant, and confirmed his identity as the offender. On cross-examination, Officer Zieman acknowledged that his reports from September 7 and 8, 2021, did not mention defendant's neck tattoos.

¶ 8    Chicago police officer Andrew Beluso testified that on September 7, 2021, he was working as an undercover surveillance officer near State and Illinois. As Officers Beluso and Zieman walked east on Illinois, Officer Beluso saw defendant—whom Officer Beluso identified in court— flag Officer Zieman and walk with him under an overpass. A few seconds later, they returned and walked in separate directions. Officer Zieman returned to Officer Beluso and signaled he had made a narcotics purchase.

¶ 9    On September 8, 2021, Officers Beluso and Zieman returned to the area. Officer Beluso observed Officer Zieman speak with defendant, whom Officer Beluso recognized from the previous day. Defendant and Officer Zieman walked to a nearby parking lot and conversed between parked vehicles. Officer Beluso could see their heads and shoulders and observed defendant for "several minutes." Officer Zieman then returned to Officer Beluso and signaled that he had purchased narcotics. Officer Beluso observed a star tattoo on defendant's neck.

¶ 10    On cross-examination, Officer Beluso testified he was not wearing recording equipment during the incidents, although such equipment existed. His reports did not describe defendant's neck tattoo.

¶ 11    Chicago police officer Matthew Duda testified that he served as an enforcement officer for the narcotics investigation and received photographs of the person to be arrested. On November 26, 2021, Officer Beluso directed Officer Duda to find defendant near State and Illinois. Officer Duda approached defendant and asked his name; defendant responded that his name was Brandon McLaurin. Officer Zieman then arrived and identified defendant as the person who sold him narcotics, and Officer Duda arrested defendant.

¶ 12    Chicago police sergeant Clark Eichman testified that on September 7, 2021, he administered the photo array in which Officer Zieman identified defendant as the person who sold Officer Zieman narcotics. Seargent Eichman did not create the photo array and had never seen defendant before.

¶ 13    Forensic scientist Cathy Regan testified that the substance in one of the three plastic baggies Officer Zieman inventoried on September 8, 2021, tested positive for cocaine. The parties stipulated that the substance Officer Zieman inventoried on September 7, 2021, also tested positive for cocaine.

¶ 14    The defense called Investigator Vernon Kelly, who testified that he searched for surveillance footage from Illinois between State and Wabash Avenue. On February 15, 2023, he went to the area and identified five surveillance cameras. He did not speak with anyone about what the cameras captured because such footage is typically overwritten every three to five months. On

cross-examination, Investigator Kelly said he did not know who operated the cameras or if they were operational.

¶ 15    The court reviewed the State's proposed jury instructions with the parties. The defense neither objected nor requested additional instructions.

¶ 16    In closing, defense counsel argued that the State did not prove defendant's identity as the person who sold Officer Zieman narcotics, where Officer Zieman's and Beluso's police reports omitted defendant's neck tattoos and the State did not provide video evidence.

¶ 17    The jury found defendant guilty of two counts of delivery of a controlled substance, and the trial court sentenced him to concurrent terms of two years' probation.

¶ 18    Defendant appealed both convictions and filed a motion in this court to consolidate the two appeals, which we granted.

¶ 19    On appeal, defendant first contends the State failed to prove his identity as the offender.

¶ 20    When considering a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *People v. Jones*, 2023 IL 127810, ¶ 28; see also *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). We will not retry the defendant or substitute our judgment for that of the trier of fact regarding the credibility of witnesses or the weight of the evidence. *Jones*, 2023 IL 127810, ¶ 28. We allow all reasonable inferences in favor of the State and will not reverse unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *Id.* The testimony of a single witness, if positive and credible, is sufficient to convict. *People v. Harris*, 2018 IL 121932, ¶ 27.

¶ 21 Relevant here, a person commits the offense of delivery of a controlled substance when he knowingly delivers any amount of cocaine. 720 ILCS 570/401(d)(i) (West 2020) (delivery of any amount of a Schedule II narcotic is a Class 2 felony); see also *id.* § 206(b)(4) (cocaine is a Schedule II controlled substance).

¶ 22 In this court, defendant does not dispute that the State established the elements of the offense. Rather, he argues that Officers Zieman's and Beluso's testimony was insufficient to identify him as the seller because their interactions with the seller were brief, their descriptions failed to mention his neck tattoos, and his arrest occurred two months after the transactions.

¶ 23 To assess identification testimony, this court applies the factors set out by the United States Supreme Court in *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). See *People v. Johnson*, 2024 IL App (1st) 220494, ¶ 30. Those factors are (1) the opportunity to view the offender during the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the offender; (4) the witness's level of certainty at the time of the identification; and (5) the length of time between the crime and the identification. *Id.*

¶ 24 After reviewing the record in the light most favorable to the State, we find sufficient evidence supports defendant's identity as the offender.

¶ 25 First, Officer Zieman had sufficient opportunity to observe defendant. On two occasions, Officer Zieman interacted with defendant long enough to negotiate a sale of narcotics, to walk to a separate nearby location, and to exchange money for the narcotics. On September 7, 2021, the day of the first transaction, Officer Zieman identified defendant from a photo array. On September 8, 2021, the day of the second transaction, both Officers Zieman and Beluso recognized defendant from the previous day. Officer Beluso further testified he observed defendant for "several minutes"

during that interaction. Then, on November 26, 2021, Officer Zieman again recognized and identified defendant as the person who twice sold him narcotics. Altogether, these facts show that Officers Zieman and Beluso had sufficient opportunity to observe defendant during each transaction. Although defendant characterizes the two encounters as "brief," the brevity of a witness's observation does not necessarily invalidate his identification testimony. See *People v. Thompson*, 2020 IL App (1st) 171265, ¶ 45 (identification testimony was reliable although witnesses respectively observed offender for 5 to 10 seconds and less than 5 seconds).

¶ 26    Second, no evidence showed that Officer Zieman was distracted during the transactions. Rather, Officers Zieman and Beluso testified that they acted as buy and surveillance officers. It is reasonable to infer that police officers would focus on a suspect's identity during a controlled narcotics buy. See *Jones*, 2023 IL 127810, ¶ 28 (we allow all reasonable inferences in favor of the State).

¶ 27    Third, although Officers Zieman and Beluso did not mention defendant's tattoos in their reports on September 7 and 8, 2021, both testified that they recognized defendant by his neck tattoos. The omission of this detail in their reports, alone, does not invalidate their identification testimony. See *People v. Slim*, 127 Ill. 2d 302, 309 (1989) ("The presence of discrepancies or omissions in a witness' description of the accused do not in and of themselves generate a reasonable doubt as long as a positive identification has been made.").

¶ 28    Fourth, neither Officers Zieman nor Beluso wavered in identifying defendant as the person who sold Officer Zieman narcotics on September 7 and 8, 2021, and both officers identified defendant in court.

¶ 29    Fifth, defendant asserts that the time between the narcotics transactions and his arrest "point[s] to a likelihood of misidentification." While a gap of 80 days is not insignificant, Officer Zieman initially identified defendant in a photo array the same day as the first offense. It is the time between the crime and the identification that is relevant. See *Johnson*, 2024 IL App (1st) 220494, ¶ 58 ("The final factor examines the time between the offense and the identification."). Here, the initial identification occurred on the same day as the initial narcotics transaction.

¶ 30    As the *Biggers* factors support Officers Zieman's and Beluso's identifications, we do not find the evidence "so unsatisfactory, improbable or implausible" as to create a reasonable doubt as to defendant's guilt. See *Slim*, 127 Ill. 2d at 307. Accordingly, defendant's challenge to the sufficiency of the evidence fails.

¶ 31    Next, defendant argues that his trial counsel rendered ineffective assistance by failing to request Illinois Pattern Jury Instructions, Criminal, No. 3.15 (approved July 28, 2017) (hereafter IPI Criminal No. 3.15), which lists the *Biggers* factors for evaluating identification testimony.

¶ 32    In reviewing a claim of ineffective assistance, we apply the test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which asks (1) whether trial counsel's performance was deficient and (2) whether the deficiency prejudiced the defendant. See *People v. Albanese*, 104 Ill. 2d 504, 525-27 (1984) (adopting *Strickland*). A defendant must show that counsel's performance was "objectively unreasonable under prevailing professional norms" and that, but for the unreasonable performance, the result would have been different. *People v. Cherry*, 2016 IL 118728, ¶ 24. Failure to establish either prong precludes a finding of ineffective assistance. *Id.*

¶ 33    Trial counsel's decision as to what jury instructions to tender is a matter of trial strategy that is generally immune to claims of ineffective assistance. *People v. Elizondo*, 2021 IL App (1st)

161699, ¶ 92. Failure to request a specific instruction can constitute ineffective assistance, however, "if the instruction was so critical to the defense that its omission denied the right of the accused to a fair trial." *Id.* We review such a claim *de novo*. *Id.*

¶ 34     IPI Criminal No. 3.15 states: "When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including, but not limited to, the following:

[1] The opportunity the witness had to view the offender at the time of the offense.

[2] The witness's degree of attention at the time of the offense.

[3] The witness's earlier description of the offender.

[4] The level of certainty shown by the witness when confronting the defendant.

[5] The length of time between the offense and the identification confrontation."

¶ 35     The Committee Note for this instruction states: "The Committee believes this instruction would serve the interests of justice by offering guidance in an area that contains complexities and pitfalls not readily apparent to some jurors. Give this instruction when identification is an issue."

¶ 36     Here, the five factors listed in IPI Criminal No. 3.15 do not help defendant's case. As discussed, both Officers Zieman and Beluso testified that they viewed defendant up close at the time of the narcotics sales. Officer Zieman participated in the sales and twice walked with defendant to a separate location to conduct the transactions. Officer Zieman also identified defendant in a photo array on the day of the first transaction, in-person the following day during the second transaction, two months later at defendant's arrest, and at trial. Neither Officer Zieman nor Beluso ever wavered in his identification. IPI Criminal No. 3.15 thus would have called attention to factors that undermined counsel's closing argument, which challenged the credibility

of the officers' identification. As such, counsel's choice not to request the instruction was sound trial strategy and not deficient performance. See *People v. Jones*, 2021 IL App (3d) 190131, ¶ 29.

¶ 37    As the factors listed in IPI Criminal No. 3.15 would have bolstered the State's case, defendant similarly cannot establish prejudice. See *id.* ¶ 30; see also *Cherry*, 2016 IL 118728, ¶ 24 (failure to establish either prong precludes finding of ineffective assistance).

¶ 38    For these reasons, we affirm the judgment of the trial court.

¶ 39    Affirmed.