2022 IL App (1st) 210793-U

SIXTH DIVISION
August 26, 2022

No. 1-21-0793

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 13756 |
| | ) | |
| AMEIR FINNEY SR., | ) | Honorable |
| | ) | Catherine Haberkorn, |
| Petitioner-Appellant. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Justices Oden Johnson and Mitchell concurred in the judgment.

**O R D E R**

¶ 1   *Held*:   The circuit court's dismissal of *pro se* defendant's postconviction petition at the second stage is affirmed where he did not make a substantial showing that his plea counsel was ineffective and he failed to present any other cognizable claims for relief.

¶ 2   *Pro se* defendant Ameir Finney Sr. appeals from the second-stage dismissal of his petition for relief filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). On appeal, Mr. Finney argues that (1) he made a substantial showing he was deprived of effective assistance of counsel, (2) his conviction represents a "fundamental miscarriage of

justice," and (3) he was deprived of due process resulting from the court's "unethical behavior" in his case. For the following reasons, we affirm the dismissal.

¶ 3                                   I. BACKGROUND

¶ 4                         A. Arrest and Preliminary Hearing

¶ 5     On August 17, 2017, Mr. Finney was arrested for suspected cocaine possession. At a preliminary hearing held on September 15, 2017, Officer Joseph Stritzel of the Chicago Police Department testified that on the night of Mr. Finney's arrest, he and two other officers responded to a call that people were selling narcotics in an alley behind the 2000 block of Morse Avenue in Chicago. When the officers pulled up to the scene, they observed Mr. Finney and two other individuals. The moment Mr. Finney saw the officers exiting their vehicle to approach the group, he began to walk away. Officer Stritzel testified that as Mr. Finney ran up a set of stairs of a nearby apartment building, they noticed he was grabbing something with his right hand.

¶ 6     Officer Stritzel testified that they followed Mr. Finney up the stairs to a landing on the second floor, where they observed him bend over and drop something onto a green bench. He described the dropped object as a clear, knotted bag with a white, powdery substance in it. The officers suspected that the bag, which weighed 25.3 grams, contained cocaine. This suspicion was later confirmed upon testing by the Illinois State Police crime lab. Officer Stritzel further testified that after seeing Mr. Finney drop the bag, the officers ordered him to return with them to their vehicle, where Mr. Finney proceeded to make a "blatant admission" that the dropped bag belonged to him and asked the officers to let the two other individuals go.

¶ 7     On cross-examination, Officer Stritzel testified that he had his weapon and flashlight drawn as he followed Mr. Finney up the stairs to where he observed Mr. Finney toss the bag containing cocaine. When defense counsel asked if his body-worn camera was activated during the arrest,

Officer Stritzel responded, "[w]e don't get those for two more weeks."

¶ 8    After hearing Officer Stritzel's testimony, the circuit court found probable cause. On September 20, 2017, Mr. Finney was charged by information with possession of more than 15 grams but less than 100 grams of "any substance containing cocaine." 720 ILCS 570/402(a)(2)(A) (West 2020).

¶ 9                    B. Rule 402 Conference and Guilty Plea

¶ 10    On January 14, 2019, the day his case was set for trial, Mr. Finney, through a different attorney than the one who had represented him at the preliminary hearing, requested a conference under Illinois Supreme Court Rule 402 (eff. July 1, 2012). The circuit court explained to Mr. Finney how the conference would work and asked if he agreed with his counsel's request for a conference. Mr. Finney responded that he did.

¶ 11    After the conference concluded, the court recalled the case and stated to Mr. Finney that he should "[c]onsider [him]self very lucky today," as the parties had reached a resolution. The State then asked for leave to amend their information to charge Mr. Finney with possession of a controlled substance weighing less than 15 grams, which meant a reduction from a Class 1 felony to a Class 4 felony. The court explained to Mr. Finney that prior to the conference, he was potentially facing between 6 and 30 years in prison if convicted, but that the State was now willing to offer probation and no jail time in exchange for a guilty plea on the reduced charge. Mr. Finney stated that he understood and that he accepted the offer. The court then admonished Mr. Finney on the consequences of his plea, and Mr. Finney confirmed that he wished to go forward with it.

¶ 12    The State then offered its factual basis for the conviction, explaining that had the case gone to trial, it would have called Officer Stritzel to testify, and another officer, who would have testified to details relating to the arrest of Mr. Finney and to the chain of custody of the contraband collected

at the scene. The State explained that it also would have called an analyst from the Illinois State Police crime lab, who would have been qualified as an expert and would have testified that the substance in the bag found near Mr. Finney tested positive for cocaine.

¶ 13    The court then sentenced Mr. Finney to 18 months of probation and 75 hours of intensive outpatient treatment for substance abuse. The court also ordered Mr. Finney to attend two "12-step" meetings per week for the entirety of his probation. The court further ordered Mr. Finney to submit to regular drug testing. Mr. Finney never filed a motion to withdraw his plea.

¶ 14                                    C. Postconviction Proceedings

¶ 15    On October 22, 2019, Mr. Finney filed a *pro se* petition pursuant to the Act, arguing that his plea counsel had provided him with ineffective assistance. The central thrust of Mr. Finney's ineffective assistance claim had to do with body-worn camera footage documenting his arrest. He alleged that during the preliminary hearing, he was led to believe that there would not be any such footage at his trial. This belief was apparently based on Officer Stritzel's statement on cross-examination, "[w]e don't get those for two more weeks." However, prior to the Rule 402 conference, plea counsel told Mr. Finney that there was in fact body-worn camera footage documenting his arrest that the State had shared with him in discovery. Based on this sequence of events, Mr. Finney argued that plea counsel misled him with "false information that he claimed was evidence against me at trial."

¶ 16    In addition to his ineffective assistance of counsel claim, Mr. Finney also alleged in his petition that he was the victim of a "fundamental miscarriage of justice." His basis for this claim was CCTV surveillance footage documenting part of his arrest, which he attached to the petition. He argued that the footage undercut aspects of Officer Stritzel's testimony at the preliminary hearing. Specifically, Mr. Finney argued that the video revealed different lighting conditions than

the ones described by Officer Stritzel and also showed that Officer Stritzel did not have his gun drawn prior to the arrest as he had testified. Based on these differences between the testimony and what the video purportedly showed, Mr. Finney argued that he was subjected to a "drastic miscarriage of justice" and convicted of a crime the State could not prove he committed.

¶ 17    To further support his claims, Mr. Finney also attached to his petition a letter his plea counsel had written to the Attorney Registration and Disciplinary Commission (ARDC) in response to a complaint filed by Mr. Finney. In the letter, plea counsel provided his version of the events leading up to Mr. Finney's acceptance of the guilty plea. According to plea counsel, prior to the decision to participate in the Rule 402 conference, he discussed and reviewed all the evidence with Mr. Finney, including both the CCTV footage and body-worn camera footage turned over by the State.

¶ 18    The State filed a motion to dismiss Mr. Finney's petition on October 30, 2020. Addressing Mr. Finney's ineffective assistance claim, the State argued that Mr. Finney failed to coherently allege how Officer Stritzel's ambiguous statement about body-worn camera footage rendered ineffective plea counsel's advice to participate in a Rule 402 conference. The State also argued that even assuming Mr. Finney could somehow show plea counsel's advice to participate in a Rule 402 conference rose to the level of being objectively unreasonable, he could not show how he was prejudiced by his acceptance of that advice considering that his lawyer ultimately negotiated a deal where he pleaded guilty to a substantially reduced charge and did not have to serve any jail time.

¶ 19    In response to Mr. Finney's "miscarriage of justice" claim, the State argued that the video footage he attached was not exculpatory, but merely showed some minor contradictions in Officer Stritzel's testimony. At best, the State contended, the contradictions identified by Mr. Finney amounted to matters of collateral impeachment, which were insufficient to "cause a finder of fact

to conclude that [Mr. Finney] did not possess a controlled substance."

¶ 20    Mr. Finney filed a response to the State's motion to dismiss on January 15, 2021. In his response, he included an additional allegation of ineffective assistance, arguing that his attorney was also ineffective for rejecting his efforts to get a neighbor to testify on his behalf. Mr. Finney explained that this neighbor would have testified that on the night of his arrest, Mr. Finney was attending her birthday party. According to Mr. Finney, plea counsel warned him that due to his neighbor's criminal record, the State would be able to discredit her testimony and thus counsel "vehemently rejected" the idea of the neighbor writing an affidavit in his defense.

¶ 21    Mr. Finney also claimed in his response that plea counsel "beguiled [him] financially" in several ways and he reiterated his central argument about the body-worn camera footage, contending that "any seasoned attorney" would have seen Officer Stritzel's comment and reached the conclusion "very quickly that (no) such footage existed."

¶ 22    Also on January 15, 2021, while the motion to dismiss was pending, Mr. Finney filed a motion for change of venue and substitution of judge, alleging that he had received "undue prejudice" from the judge that would preside over the hearing on the State's motion to dismiss. Mr. Finney claimed that while he was on probation, the judge had arbitrarily ordered that he be taken into custody merely because he had "motioned up [his] case" to see his probation officer earlier than originally scheduled. A hearing was held on his motion before a different judge on February 26, 2021. That judge found that Mr. Finney had been taken into custody not arbitrarily, but because he had failed to satisfy an obligation of his probation agreement. The court explained to Mr. Finney that his being taken into custody for violating the terms of his probation agreement did not provide a sufficient basis to disqualify the original judge. His motion was denied.

¶ 23    On June 4, 2021, the court held a hearing on the State's motion to dismiss. The State

reiterated the arguments from its motion, explaining that Mr. Finney's ineffective assistance claim was confused and that he could show neither deficiency nor prejudice. Then, addressing Mr. Finney's "miscarriage of justice" claim, the State argued that Mr. Finney was not advancing any cognizable argument, but rather was "just complaining about the case and the facts of the case."

¶ 24 When it was Mr. Finney's turn to address the court, he began by summarizing the facts of his case and reading to the court portions of the transcript from his preliminary hearing. He then explained that "any seasoned attorney would have thoroughly read the preliminary hearing once they token [*sic*] over the case and with an effective counsel and would have acknowledged that the Officer Stritzel sworn testimony was there, sworn testimony there was no body camera being worn by any of the officers the night of August 17, 2017."

¶ 25 The court stated that it did not understand his argument and asked him to point out specifically what his counsel had done that fell below an objective standard of reasonableness. Mr. Finney repeated his claims about the body-worn camera footage and made conclusory remarks about his attorney's competence.

¶ 26 Shifting to his second argument, Mr. Finney then discussed the various inconsistencies between Officer Stritzel's account of what occurred and surveillance footage from the scene. These inconsistencies, Mr. Finney concluded, "clearly showed [a] basic miscarriage of justice." The court then asked Mr. Finney how exactly he was prejudiced by any of this considering that his lawyer "got the case all the way reduced to probation." Mr. Finney responded, "I should never got on [*sic*] probation is what I'm saying. I should never got on [*sic*] anything if he would have done his competent job." Mr. Finney grew more frustrated at this point and began to lecture the court about impartiality and judicial oaths.

¶ 27 The court dismissed Mr. Finney's petition, explaining that he failed to show how anything

his attorney did fell below an objective standard of reasonableness. To the contrary, the court explained, Mr. Finney had received a "huge benefit by taking the plea" and he had "not shown [the court] at all" how he was harmed by taking the plea or how the outcome would have been different if he had chosen not to follow his lawyer's advice.

¶ 28    The court also reminded Mr. Finney that he had received numerous admonishments prior to agreeing to accept the plea deal. Mr. Finney interrupted the court with more comments about the body-worn camera footage and the court repeated that he failed to show objective unreasonableness. The court then explained to Mr. Finney that in the absence of a showing that his lawyer had made an objectively unreasonable decision, it is not the role of the judge to interfere with questions of legal strategy. After granting the State's motion, the court declared that Mr. Finney had terminated his probation satisfactorily and it closed his case.

¶ 29    Mr. Finney now appeals.

¶ 30                                II. JURISDICTION

¶ 31    The circuit court dismissed Mr. Finney's postconviction petition on June 4, 2021, and he timely filed a notice of appeal from that ruling on June 16, 2021. We have jurisdiction over this appeal pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 606 (eff. July 1, 2017) and Rule 651(a) (eff. July 1, 2017), governing appeals from final judgments in postconviction proceedings.

¶ 32                                III. ANALYSIS

¶ 33    A postconviction petition is properly dismissed at the second stage of proceedings when its allegations of fact, "liberally construed in favor of the petitioner and in light of the original trial record," fail to make a "substantial showing" of a constitutional violation. *People v. Coleman*, 183 Ill. 2d 366, 382 (1998). We review the dismissal of a postconviction petition at the second stage

- 8 -

*de novo*. *People v. Sanders*, 2016 IL 118123, ¶ 31.

¶ 34    Mr. Finney argues on appeal that the circuit court erred in dismissing his postconviction petition for three reasons. First, he argues that he made a substantial showing that his plea counsel provided ineffective assistance where the contents of counsel's letter to the ARDC contradicted Officer Stritzel's testimony from his preliminary hearing. Second, he asserts that he was the victim of a "fundamental miscarriage of justice" where the State did not adequately address video surveillance footage that he characterizes as exculpatory. Third, he claims that the court erred by "not allowing Due process under the 5th amendment right as procedural requirements that are granted to [him] as a self-represented litigant and under the Supreme Court of Illinois rule 63." For the following reasons, we affirm the dismissal of Mr. Finney's petition.

¶ 35    Before addressing the merits of Mr. Finney's claims, however, we must first briefly respond to, and reject, the State's argument that Mr. Finney forfeited any issues relating to his plea when he failed to timely file a post-judgment motion challenging that plea which is a required predicate to a direct appeal under Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). As we explained in *People v. Miranda*, 329 Ill. App. 3d 837, 841 (2002), the requirement that a defendant file a motion to withdraw a guilty plea set out in Rule 604(d) does not bar the defendant's right to file a postconviction petition. Accordingly, Mr. Finney's failure to file a motion to withdraw his guilty plea does not prevent him from moving forward on his claims.

¶ 36                                 A. Ineffective Assistance of Counsel

¶ 37    The central thrust of Mr. Finney's ineffective assistance claim appears to be that it was the threat of body-worn camera footage being presented at his trial that ultimately convinced him to plead guilty. He now characterizes this footage as "false evidence" and claims that his attorney should have been aware of its falsity. We are not persuaded by this argument.

¶ 38 Counsel is ineffective when he or she performs deficiently and that deficient performance results in prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); see also *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (*Strickland* governs claims of ineffective assistance during plea negotiations); *People v. Albanese*, 104 Ill. 2d 504, 526 (1984) (adopting the *Strickland* standard in Illinois). Counsel performs deficiently where his or her representation falls "below an objective standard of reasonableness," and a defendant is prejudiced when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. "Because a defendant must satisfy both prongs of the *Strickland* test to prevail, the failure to establish either precludes a finding of ineffective assistance of counsel." *People v. Cherry*, 2016 IL 118728, ¶ 24. In the specific context of a guilty plea, counsel performs deficiently where he or she fails to ensure the defendant's plea is entered voluntarily and intelligently (*People v. Hall*, 217 Ill. 2d 324, 335 (2005)), and a defendant is prejudiced by that deficient performance where "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial" (internal quotation marks omitted) (*People v. Brown*, 2017 IL 121681, ¶ 26). Mr. Finney cannot satisfy either prong of this standard.

¶ 39 Mr. Finney's assumption that the body-worn camera footage documenting his arrest was false rests on one line from the transcript of the preliminary hearing where, in response to a question about whether his camera was activated at the time of Mr. Finney's arrest, Officer Stritzel said "[w]e don't get those for two more weeks." Mr. Finney apparently understands this statement as an admission that the State had no body-worn camera footage in its possession. Based on this interpretation, he concludes that the State was bluffing when it said it did have such footage and that plea counsel's performance was thus deficient because he did not realize the footage did not

actually exist. In other words, plea counsel's lack of due diligence contributed to Mr. Finney pleading guilty under false pretenses. The problem with this argument is that Mr. Finney's assumption that this body-worn camera footage was false is not supported by the record.

¶ 40 In plea counsel's letter to the ARDC, which Mr. Finney attached to his petition, counsel not only claimed that such footage did in fact exist, but that he reviewed it with Mr. Finney on at least two occasions prior to the Rule 402 conference. Additionally, as the State explains in its brief, there are several plausible explanations for the discrepancy between Officer Stritzel's statement and the existence of body-worn camera footage. Perhaps Officer Stritzel himself was not wearing a camera, but other arresting officers were. Or perhaps when he said he would not "get those for two more weeks," he was referring to *footage* of the incident. In short, for Mr. Finney to argue that his attorney's performance was deficient because he did not realize the State's body-worn camera footage was false, he must first show that the footage was, in fact, false. He has failed to make that showing and for that reason, his deficiency argument is unpersuasive.

¶ 41 Mr. Finney also fails to satisfy the prejudice prong of *Strickland*. Even if we were to accept his unsupported claims about the body-worn camera footage, officer testimony alone likely would have been more than sufficient to support a conviction for possession. As the State argues, had this case proceeded to trial, two officers would have testified that they saw a bag of cocaine in Mr. Finney's possession before he tossed it. These officers also would have testified that after being detained, Mr. Finney told them that the bag belonged to him. While corroborative body-worn camera footage would have made the State's case even stronger, the lack of such footage is not, by itself, exculpatory. In sum, we reject Mr. Finney's argument that he has a constitutional claim that plea counsel was ineffective for a failure to realize that there was no footage of Mr. Finney's arrest.

¶ 42                            B. Fundamental Miscarriage of Justice

¶ 43    Mr. Finney's other arguments are a little difficult to discern. One argument he advances is that he was subjected to a "fundamental miscarriage of justice" by assistant states attorneys (ASAs) who prosecuted his case in a "malignant" manner. His primary complaint here is that the ASAs were dismissive of surveillance footage he produced depicting part of his arrest. He claims this footage is exculpatory because it "contradicts all of [Officer Stritzel's] testimony" at the preliminary hearing.

¶ 44    Mr. Finney's reference to a "miscarriage of justice" may be an attempt to invoke the exception to the general bar on the filing of successive postconviction petitions. See *People v. Edwards*, 2012 IL 111711, ¶ 23. This exception is available to those successive petitioners who present new evidence of actual innocence. *Id.* Mr. Finney has no need to invoke this exception because he is not a successive petitioner.

¶ 45    To the extent that Mr. Finney is arguing that the circuit court erred in dismissing his petition because the surveillance footage he highlights demonstrates actual innocence, we reject that argument. As our supreme court explained in *People v. Coleman*, 2013 IL 113307, ¶ 96:

> "[I]n order to succeed on a claim of actual innocence, the defendant must present new, material, noncumulative evidence that is so conclusive it would probably change the result on retrial. [Citation]. New means the evidence was discovered after trial and could not have been discovered earlier through the exercise of due diligence. [Citation]. Material means the evidence is relevant and probative of the petitioner's innocence. [Citation]. Noncumulative means the evidence adds to what the jury heard. [Citation]. And conclusive means the evidence, when considered along with the trial evidence, would probably lead to a different result. [Citation]."

¶ 46    The surveillance footage Mr. Finney refers to does not come close to satisfying this standard. For one, the evidence is not new. Mr. Finney concedes that he was aware of this surveillance footage before pleading guilty. His plea counsel was also aware of it, as is spelled out in his letter to the ARDC, where counsel acknowledged the existence of the footage and explained that Mr. Finney forwarded it to him following their first conversation together.

¶ 47    Mr. Finney has also failed to establish that this surveillance footage is either material or conclusive. According to him, the footage reveals different lighting conditions than the ones described by Officer Stritzel and shows that the officer did not have his gun drawn prior to the arrest as he had testified. But as the State explains in its brief, even if the inconsistencies identified by Mr. Finney are in fact reflected in the surveillance footage, these inconsistencies provide "at best, slight impeachment" of Officer Stritzel's testimony, and slight impeachment is a far cry from conclusive evidence of actual innocence. Additionally, prior to accepting the plea deal, Mr. Finney's own lawyer seemed to agree that the surveillance footage had limited probative value. As plea counsel explained in his ARDC letter, he recalled explaining to Mr. Finney that the surveillance footage was not exculpatory because it only depicted part of Mr. Finney's arrest, not the entire event or the events leading up to it. In sum, Mr. Finney has not adequately demonstrated the elements required to advance an actual innocence claim.

¶ 48                                    C. Due Process

¶ 49    Mr. Finney's final argument is that, in dismissing his petition, the circuit court both denied him "[d]ue process under the 5th amendment" and failed to satisfy its obligations pursuant to Illinois Supreme Court Rule 63 (eff. Dec. 16, 2020), which concerns judicial conduct and ethics. In making these arguments, Mr. Finney uses at times quite hostile language, accusing the circuit court judge "and her cronies" of engaging in a pattern of unethical behavior and subjecting him to

an "arrogant rape of justice violating all judicial procedures." This claim appears to be, at least in part, an argument that his motion for substitution of judge, filed before the hearing on the State's motion to dismiss (see *supra* ¶ 22), was improperly denied. That argument fails.

¶ 50　　To prevail on a motion for substitution of judge for cause, Mr. Finney would have to demonstrate that there were facts and circumstances which indicated that the circuit court judge was prejudiced. *People v. Haywood*, 2016 IL App (1st) 133201, ¶ 29. Aside from innuendos and bluster, Mr. Finney has not actually provided any concrete or credible support for his assertion that the circuit court was prejudiced or personally biased against him. He highlights the fact that at one point, he was found to be in violation of his probation agreement and taken into custody, but an adverse ruling is not a valid basis for a claim of judicial bias or partiality. See *id.*; *Eychaner v. Gross*, 202 Ill. 2d 228, 280 (2002). In sum, Mr. Finney's allegations about judicial impropriety are unsupported and provide no basis for relief.

¶ 51　　We are unable to discern what, if anything, underlies the remainder of Mr. Finney's due process claim, and pursuant to Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), issues that are "ill-defined and insufficiently presented" are considered waived. *Walters v. Rodriguez*, 2011 IL App (1st) 103488, ¶ 6.

¶ 52　　　　　　　　　　　　　　IV. CONCLUSION

¶ 53　　For the foregoing reasons, we find that the circuit court properly dismissed Mr. Finney's petition.

¶ 54　　Affirmed.